# Illinois Official Reports

## Appellate Court

***People v. Mauricio*, 2014 IL App (2d) 121340**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HECTOR M. MAURICIO, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1340 |
| Filed | March 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 60-year sentence imposed on defendant for first-degree murder was vacated and the cause was remanded for resentencing, since the trial court improperly considered the aggravating factor that the victim was "a member of the greatest generation, a World War II veteran," and "a very good man," and the record did not show that the weight placed on that improperly considered factor did not lead to a greater sentence. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-CF-1516; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Sentence vacated; cause remanded. |

| Counsel on Appeal | Thomas A. Lilien and Vicki P. Kouros, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Kathryn E. Kohls, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. |
| | Justice McLaren concurred in the judgment and opinion. |
| | Justice Hudson specially concurred, with opinion. |

**OPINION**

¶ 1    Defendant, Hector M. Mauricio, appeals, asserting that the trial court abused its discretion when it imposed on him a 60-year sentence for the first-degree murder (720 ILCS 5/9-1(a)(1) (West 2006)) of Roscoe Ebey. He argues, among other things, that the trial court based the sentence in part on an improper aggravating factor, Ebey's personal traits. We agree that this is an improper factor. We further hold that the record does not demonstrate that the trial court's consideration of this improper factor did not lead to a greater sentence. We therefore must vacate the 60-year sentence and remand the matter for resentencing. This being the case, we need not address defendant's other claim of error, that the trial court failed to give sufficient weight to certain mitigating factors; on remand, the court will necessarily weigh all proper factors anew.

¶ 2                                I. BACKGROUND

¶ 3    Defendant entered a blind guilty plea to a charge of first-degree murder; the charge stemmed from the May 29, 2007, stabbing death of Ebey. At sentencing, the trial court heard testimony from a neighbor who arrived at the crime scene, sheriff's deputies who were dispatched to the scene, and expert witnesses, including the coroner's physician, who presented forensic evidence.

¶ 4    According to the trial court's summary, the autopsy showed "79 total injuries, stab wounds, incised wounds, puncture wounds, abrasions, two stab wounds being fatal, 36 total stab wounds, 38 incised wounds, two puncture wounds, three abrasion wounds, and a burn[ ] wound."

¶ 5    The trial court stated that it had initially considered all the factors relating to death-penalty eligibility and had concluded that defendant was death-penalty eligible. It took notice of defendant's criminal history: he had a history of battery convictions followed by poor probation compliance. It noted that he had been in a fight while incarcerated and had spat on a

deputy. He had been sent to the Department of Corrections twice and had been a street gang member and a long-term drug user.

¶ 6   On the mitigating side, the trial court noted that defendant's father had murdered defendant's brother and that another brother was imprisoned. It also noted a psychologist's report that described defendant's upbringing as having been in a kind of "urban war zone." Defendant's mother was an alcoholic and his living situation growing up was highly unstable. Defendant's murdered brother had been the main source of family stability. After the brother's murder, defendant's grandparents took his sister to Arizona, but he stayed behind. The trial court noted his respectful demeanor in court, that he had mostly been a model detainee, that he had "accepted Christianity" and become a "faithful follower" while incarcerated, "which is also a plus on his part," and that he had gotten a GED and tried "to better his life" while incarcerated.

¶ 7   The trial court noted that it had considered the financial impact of incarceration and agreed that the following applied in aggravation: "factor 3 ['the defendant has a history of prior delinquency or criminal activity';] factor 7 ['the sentence is necessary to deter others from committing the same crime';] *** and also factor 8, the victim was over 60." See 730 ILCS 5/5-5-3.2(a)(3), (a)(7), (a)(8) (West 2006).

¶ 8   In its summary, the trial court began:

> "The court has considered Mr. Ebey, the victim in this case. He was a member of the greatest generation, a World War II veteran. The court has the utmost respect for him, for his service to this country. He was a very good man, there is no question about that."

It then noted that it had previously found the crime to be exceptionally brutal and heinous. It specifically stated that it was treating defendant's age (20 at the time of the murder) as mitigating. Further, he admitted his guilt and "his youth was in an urban war zone." Finally, it stated:

> "He's a respectful young man. He's a faithful young man. And because of that, because of those reasons, I will not go into extended term or go to natural life.
>
> But I will, under the circumstances, in considering a very, very fine man, who was a great value to his family and society, his life was cut short ***.
>
> I will sentence Mr. Mauricio to 60 years in the Illinois Department of Corrections ***."

¶ 9   Defendant filed a timely motion to reconsider the sentence, raising 19 issues, the last of which was that "[t]he court erred in imposing a higher sentence on Defendant due to the Court's finding that the victim was of great value to his family and to society." At the hearing on the motion, the parties rested on their filings. The trial court denied the motion. It stated that it had considered the sentence carefully. The only specific issue that it commented on was the last one:

> "I believe *** the State adduced testimony from many witnesses as to–was it Mr. Ebey?
>
> [THE STATE]: Yes.
>
> THE COURT: Mr. Ebey, World War II veteran, father, grandfather, wonderful neighbor. State put on quite a bit of evidence to that effect.

> So recognizing the arguments and the issues raised, I would deny the motion to reconsider."

¶ 10 Defendant appealed and we summarily remanded for the filing of a certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2006) and for related proceedings. *People v. Mauricio*, 2012 IL App (2d) 110890-U. Defense counsel then filed an amended motion to reconsider the sentence, which in relevant part was identical to the one we have quoted, and a Rule 604(d) certificate. At the hearing, the State argued:

> "It certainly was not the State's position that you ever considered the victim's value to his family and society as *** an aggravating factor.
>
> *** [I]t was not my view *** that you took that into consideration when you sentenced the defendant to 60 years in the Illinois Department of Corrections."

¶ 11 The trial court stated that it had considered the arguments and submissions but had been "in a much better position at the time of sentencing several years ago having considered the evidence adduced." It ruled that its sentence had been appropriate and denied the new motion. Defendant filed a timely notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13 On appeal, defendant argues first that the trial court abused its discretion by relying on an improper aggravating factor–Ebey's personal traits–in deciding the sentence. Second, he argues that the court gave insufficient weight to certain mitigating factors, principally defendant's mental illness. The State responds that the improper factor was incidental and that "defendant has not proved that the trial court relied on the improper factor when imposing the sentence." It further argues that the trial court did adequately consider the mitigating factors.

¶ 14 We agree with defendant that the trial court improperly considered Ebey's personal traits in imposing the sentence. We hold that error to be decisive; we do not address whether the court gave adequate weight to mitigating factors, as defendant will now have a new sentencing hearing at which the trial court will weigh all factors anew.

¶ 15 Although we ordinarily review with great deference a trial court's choice of sentence within the applicable guidelines, the question of whether the court relied on an improper in imposing the sentence is a question of law, which we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. When a sentencing error is properly preserved,[1] we cannot affirm a sentence that the trial court based on an improper factor unless we can "determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008).

¶ 16 The State quotes the proper standard, but it implies too high a burden when it suggests that defendant must prove that the trial court's reliance on the factor was prejudicial; only in a plain-error analysis does a defendant retain such a burden. See *People v. McLaurin*, 235 Ill.

---

[1]As noted, in his motions to reconsider the sentence, defendant argued that "[t]he court erred in imposing a higher sentence on Defendant due to the Court's finding that the victim was of great value to his family and to society." To the extent that this argument was different from his argument on appeal, the State has not argued forfeiture on appeal and thus has forfeited any such assertion. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000).

2d 478, 495 (2009) (discussing the general difference between preserved-error and plain-error analyses).

¶ 17 The State apparently concedes that Ebey's personal traits constituted an improper factor. That concession is proper. However, we think that some discussion of the factor will prove useful, as, given the sparseness of authority on the subject, one could understand the prohibition to be broader than it is. Consideration of a victim's personal traits is improper as long as those traits *as such* are what the trial court considers. To the extent that a victim's personal traits are necessary to understand the seriousness of the crime or other proper sentencing factors, consideration of such traits is not inherently error.

¶ 18 The principle at issue has appeared only rarely in Illinois cases. In *People v. Walker*, 109 Ill. 2d 484, 505 (1985), our supreme court stated that "[p]ersonal traits of victims are not relevant to the question of guilt or innocence or to the question of the proper sentence to be imposed." In *People v. Joe*, 207 Ill. App. 3d 1079, 1087 (1991), the appellate court extended that principle to the victim's "status" and "community standing":

> "The [trial] court *** committed further error by placing emphasis on the status of Dr. Coleman[, the victim,] in the community. Personal traits of victims are not relevant to the question of guilt or innocence or to the question of the proper sentence to be imposed. [Citation.] Here, consideration of the victim's profession and community standing was clearly inappropriate."

¶ 19 To be sure, victim-impact evidence is admissible (725 ILCS 120/6 (West 2006)), as such evidence is "consistent with our legal tradition of examining the harm caused by a crime in order to determine both the elements of a criminal offense and the appropriate punishment that should follow from that crime." *People v. Shaw*, 186 Ill. 2d 301, 352 (1998) (citing *Payne v. Tennessee*, 501 U.S. 808, 819-20 (1991)). " 'Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities.' " *Id.* (quoting *Payne*, 501 U.S. at 825). Thus, at sentencing, a trial court may consider victim-impact evidence insofar as it pertains to the specific harm caused by the crime. However, in *Payne*, the Supreme Court noted that the admissibility of such evidence does not imply "that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy." *Payne*, 501 U.S. at 823. The evidence may not be used "to encourage comparative judgments of this kind–for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not. It is designed to show instead each victim's 'uniqueness as an individual human being,' whatever the [sentencing authority] might think the loss to the community resulting from his death might be." (Emphasis omitted.) *Id.* Thus, *Payne* supports an inference that is perfectly consistent with *Walker* and *Joe*. Although a trial court may rely on a crime's specific harm–the "impact" of the victim's death–it may not rely on the victim's mere status. "Evidence of this nature encourages the very 'comparative judgments' that the Supreme Court suggests victim impact evidence should avoid." *United States v. Wilson*, 493 F. Supp. 2d 364, 394 (E.D.N.Y. 2006) (in light of *Payne*, evidence "demonstrating that because the victims were police officers Wilson is particularly blameworthy for their murders, is not appropriate victim impact evidence").

¶ 20 Here, to the extent that the trial court relied on Ebey's "great value to his family and society," the court was at least purporting to rely on the specific harm caused by defendant's

crime. See *Payne*, 501 U.S. at 825 (" '[T]he State has a legitimate interest in [showing that] the victim is an individual whose death represents a unique loss to society and in particular to his family.' " (quoting *Booth v. Maryland*, 482 U.S. 496, 517 (1987) (White, J., dissenting, joined by Rehnquist, C.J., and O'Connor and Scalia, JJ.))); *Shaw*, 186 Ill. 2d at 352 ("In the case at bar, we find that the bulk of the statements to which defendant objects describe the impact the murder of Simenson had on his family, and thus fall squarely within the permissible range of victim impact evidence."). No one would deny, for example, that a killing that deprives children of their primary caregiver might be a more serious offense than one that damages fewer lives. However, the trial court also unmistakably focused on Ebey's personal traits as such. In considering "Mr. Ebey, the victim in this case," the trial court focused on his status as "a member of the greatest generation, a World War II veteran," for whom the court had "the utmost respect," for "his service to this country." The trial court concluded that Ebey was "a very good man." Of course, we do not disagree with any of the trial court's sentiments. Nevertheless, the trial court's implication was as improper as it was unmistakable: because Ebey was "a very good man," defendant's crime was more serious than it otherwise would have been.

¶ 21    The State argues that we may affirm defendant's sentence because the record shows that Ebey's personal traits were an insignificant factor, which the trial court mentioned only in passing. We cannot agree. It is true that we must assess the trial court's comments as a whole, without focusing on "a few words or statements." *People v. Dal Collo*, 294 Ill. App. 3d 893, 897 (1998). However, as noted, in considering Ebey, the trial court seemed to focus on his status. Then, just before it imposed the sentence, the trial court reiterated that Ebey was "a very, very fine man." In ruling on the first motion to reconsider the sentence, it spontaneously selected defendant's objection to such considerations as the one issue on which it commented. Its response was simply that the State had proven that Ebey was, among other things, a World War II veteran. Finally, on remand, with the State indirectly encouraging the trial court to distance itself from its previous comments, it said that it stood by its decision. If the trial court would have given the same sentence without considering Ebey's personal traits, it presumably would have expressly reflected that at either or both of these hearings. In sum, we simply cannot "determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *Heider*, 231 Ill. 2d at 21.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, we vacate defendant's sentence and remand the matter for resentencing.

¶ 24    Sentence vacated; cause remanded.

¶ 25    JUSTICE HUDSON, specially concurring.

¶ 26    I agree with the majority's elucidation of the *legal* issues raised in this case. I write separately to emphasize the distinction between that which is proper and relevant victim-impact evidence and that which is not. In the context of a sentencing hearing in a criminal case, the law values human life equally. Accordingly, as the State acknowledges, it

is improper for a court to consider the personal traits or personal qualities of a victim in determining an appropriate sentence.

¶ 27 Undoubtedly, as the trial court recognized, Mr. Ebey was a fine man. For his service to this country in World War II, we all owe him a debt of gratitude. However, the law does not allow us to recognize such a factor in sentencing a defendant. While this might seem peculiar under the present circumstances, there is good reason for this rule. Defendant pled guilty to a horrible, heinous crime. It would have been so no matter whose home he had chosen to enter and whose life he had taken. Had defendant chosen a home occupied by a person who had not accomplished the same things in life as Mr. Ebey, defendant's crime would have remained heinous and horrible.

¶ 28 It should be emphasized, however, that not only is victim-impact evidence constitutionally permissible, it is specifically provided for in Illinois by statute. See 730 ILCS 5/5-4-1(a)(7) (West 2006) (sentencing hearing). Clearly a victim's death will have consequences, for the victim's family, for example. Evidence of such consequences may be presented to the sentencing judge as part of the actual harm caused by the defendant. *People v. Shaw*, 186 Ill. 2d 301, 351-52 (1998). Thus, the value of a victim to his family and community bears obvious relevance to sentencing and may be considered by the trial court in imposing a sentence. Only where evidence of a victim's worthiness, *vis-à-vis* other human lives and independent of the victim's relationships with others, is taken into consideration and relied upon by the trial court in imposing a sentence would error occur. As it would be inappropriate to decrease a defendant's sentence if he took a somehow less-accomplished life, the law precludes a court from increasing a sentence based on the personal traits or personal qualities of a victim.