# Illinois Official Reports

## Appellate Court

---

### *People v. Arbuckle*, 2016 IL App (3d) 121014-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON M. ARBUCKLE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-1014 |
| Filed | August 16, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 11-CF-37; the Hon. Cornelius J. Hollerich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Joel C. Wessol, both of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Geno J. Caffarini, State's Attorney, of Princeton (Dawn D. Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Lytton and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Aaron M. Arbuckle, appeals his sentences for aggravated domestic battery and aggravated battery. He argues that the matter should be remanded for resentencing because the trial court committed plain error when it sentenced him while under the misapprehension that defendant was eligible for an extended-term sentence on the aggravated battery conviction. Defendant further contends that counsel was ineffective for failing to raise that issue before the trial court. Finally, defendant argues that he was subjected to an improper double enhancement in that the trial court considered the harm done to the victim despite the fact that "great bodily harm" was an element of the charged offense. We affirmed in a prior opinion. Subsequently, the supreme court issued a supervisory order directing us to vacate our judgment and reconsider in light of *People v. Clark*, 2016 IL 118845, to determine if a different result is warranted. And so we do. After reconsidering, we find that a different result is not warranted. We affirm.

¶ 2                                                    FACTS

¶ 3        On June 9, 2011, the State charged defendant with aggravated domestic battery (count I) (720 ILCS 5/12-3.3(a) (West 2010)) and aggravated battery (count II) (720 ILCS 5/12-4(b)(1) (West 2010)). With respect to count I, the State alleged in the aggravated domestic battery information that defendant struck his girlfriend, Kayla Zimmerlein, with a golf club, resulting in great bodily harm. In count II, the State alleged that defendant stabbed Nicole Reuter with a broken golf club.

¶ 4        Defendant entered an open guilty plea on September 22, 2011. While admonishing defendant, the court informed him that the maximum prison term for aggravated domestic battery, a Class 2 felony, would be 14 years' imprisonment. Defendant was eligible for an extended-term sentence due to a prior Class 2 conviction. He was also not eligible for probation. The court also informed defendant that he was extended-term eligible on the aggravated battery charge, a Class 3 felony: "The maximum prison sentence normally would be five years for a Class 3 felony. But because of the prior Class 2 conviction in 2005 in Lee County, you would be eligible for extended term ***. The maximum prison sentence could be ten years rather than five."

¶ 5        The factual basis established that defendant lived with his girlfriend, Zimmerlein, in an apartment. Reuter lived in an adjacent apartment. Defendant, Zimmerlein, and at least one other male attended a get-together in the common patio area of the apartments. After an altercation between defendant and another male, Zimmerlein took defendant back to their apartment. Defendant subsequently struck Zimmerlein with a golf club, breaking her arm. Zimmerlein called for help, at which point Reuter entered the apartment. Defendant then struck Reuter with the club, leaving a puncture mark on her torso. The court accepted the guilty plea, and the matter proceeded to sentencing.

¶ 6        Defendant's brother, grandmother, and friend testified on his behalf. Each testified that defendant had a problem with alcohol. Defendant also made a statement. He explained that he had been drinking on the night in question. He began hallucinating and thought he was being attacked. "I thought I was actually protecting when what I was doing was the exact opposite."

¶ 7     The court also considered the presentence investigation report (PSI). The PSI indicated that defendant had been convicted of burglary—a Class 2 felony—in 2005. It also showed multiple convictions for domestic battery (in 2006 and 2009) as well as a conviction for driving under the influence. The PSI also indicated that defendant had previously been diagnosed with bipolar disorder and alcohol dependence. Attached to the PSI were letters from defendant and other family members. Each letter addressed defendant's problems with alcohol.

¶ 8     The State submitted the victim impact statements of Zimmerlein and Reuter, as well as Zimmerlein's medical records. In Zimmerlein's letter, received more than four months after the battery, she described the injury as follows:

> "The ulna bone in my left arm was pretty *** shattered except for a piece by my wrist and a piece by my elbow. The rest was just crushed fragments. The doctor had to scrape and clean all the tiny little pieces that were left. He the[n] had to put in a plate and five screws just to keep my arm together."

Zimmerlein also wrote that she had amassed more than $25,000 in medical expenses. She was unable to lift more than five pounds with her arm, which affected her ability to work.

¶ 9     Zimmerlein wrote that the injury was worse than her doctor originally expected. Following the initial surgery, the doctor informed her there was no sign of bone growth. Zimmerlein was put on a bone stimulation system, which did not work. She was to undergo further surgery to correct the problem. Zimmerlein claimed that if that surgery was unsuccessful, her arm "could be like this for the rest of [her] life." She still suffered from daily pain in her arm.

¶ 10    Medical reports classified Zimmerlein's injury as a "Grade I open left ulna shaft fracture with comminution involving greater than 5 pieces." The reports also detailed the "nonunion" of the fracture, as well as the lack of progress with a bone stimulator. The last medical report in the PSI, dated October 14, 2011, indicated that Zimmerlein would need surgery to remove a bone graft. The doctor noted that he did not discern "any progression at all in the fracture gap."

¶ 11    At argument, the State posited that defendant was extended-term eligible on both counts. The State asked for sentences of seven and five years' imprisonment on count I and count II, respectively. Defendant asked for a recommendation of impact incarceration.

¶ 12    After a recess, the court stated that it had considered the victim impact statements, letters written on behalf of defendant, and the PSI, including all attached reports. The court also "reviewed the factors in mitigation and aggravation." The court opined that the only applicable factor in mitigation was that defendant's conduct was clearly the result of his intoxication. The court considered this a "substantial ground[ ] tending to excuse or justify the defendant's criminal conduct" but failing to establish a defense.

¶ 13    In aggravation, the court noted the seriousness of the injuries inflicted. The court also emphasized defendant's extensive list of prior convictions and the need to deter others from committing the same crime. The court concluded: "But clearly the factors in aggravation outweigh the factors in mitigation, for whatever that's worth. But I have reviewed all of those factors, even if I haven't specifically mentioned them here in court."

¶ 14    The court stated that it was "struck by both injuries" in the present case. The court pointed out that one of the injuries "could be an injury about which nothing can be done." The court expressly acknowledged that the defense had requested impact incarceration. The court then stated: "I reviewed the statute regarding that. It would appear that the defendant technically is eligible for that. I can't in good conscience order that knowing how quickly the defendant is

likely to be released." The "extent of the injuries here" also affected the court's decision not to recommend impact incarceration.

¶ 15     The court next discussed the State's recommended sentence: "The state's attorney has pointed out that regarding Count 1, regarding both counts, that the defendant is eligible for extended term." The court offered no further comments relating to defendant's purported extended-term eligibility.

¶ 16     Ultimately, the court sentenced defendant to a term of 5½ years' imprisonment on the count of aggravated domestic battery and a term of 4 years' imprisonment on the count of aggravated battery. Addressing the issue of consecutive sentences, the court stated: "[T]he State has made an argument that they should be consecutive. I reviewed 5-8-4(c) of the Correctional Code, and my reading of the Code does not require consecutive sentences." The court nevertheless ordered the sentences to run consecutively as a matter of discretion. Stated the court: "It appears to me that there were two separate offenses committed here. In a sense this may have been one course of conduct, but it is the opinion of the court that consecutive sentences are required to protect the public."

¶ 17     Defendant subsequently filed a motion to reconsider sentence. In the motion, defendant argued that he had been subjected to an improper double enhancement when the sentencing court considered the physical injury caused as an aggravating factor. He also argued that the court failed to consider, as a mitigating factor, that defendant did not "contemplate that his criminal conduct would cause or threaten serious physical harm to another." The court denied the motion.

¶ 18                                              ANALYSIS
¶ 19                                    I. Extended-Term Eligibility
¶ 20     The offense of aggravated battery, as described in section 12-3.05(b)(1), is a Class 3 felony. 720 ILCS 5/12-3.05(b)(1), (h) (West 2010). The nonextended permissible sentencing range for a Class 3 felony is not less than two and not more than five years' imprisonment. 730 ILCS 5/5-4.5-40(a) (West 2010). Extended-term eligibility on a Class 3 felony raises the top end of the range to 10 years' imprisonment. *Id.* Here, defendant's sentence was a term of four years' imprisonment, a sentence within the nonextended range.

¶ 21     Defendant's initial argument on appeal is that the trial court erred in finding him eligible for an extended sentence on the count of aggravated battery. He contends that a trial court may only impose an extended-term sentence for the most serious offense committed during a single course of conduct. Arguing that the two offenses for which he was convicted were committed as part of a single course of conduct, defendant maintains that he was eligible for an extended-term sentence only on his conviction for aggravated domestic battery, a Class 2 felony.

¶ 22                                             A. Plain Error
¶ 23     Preservation of a claim of sentencing error requires both a contemporaneous objection and a written postsentencing motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Defendant did neither. Unless defendant establishes plain error, he forfeits the claim. *Id.* at 545.

¶ 24     The first step in any plain-error analysis is determining whether any "clear or obvious error" has occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Here, defendant

contends that the trial court's belief that he was eligible for an extended-term sentence for aggravated battery was such an error.

¶ 25    Section 5-8-2(a) of the Unified Code of Corrections governs the imposition of an extended-term sentence and provides:

> "A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Article 4.5 of Chapter V for an offense or offenses within the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in Section 5-5-3.2 or clause (a)(1)(b) of Section 5-8-1 were found to be present." 730 ILCS 5/5-8-2(a) (West 2010).

Our supreme court interprets this section to mean that "a defendant who is convicted of multiple offenses may be sentenced to an extended-term sentence only on those offenses that are within the most serious class." *People v. Bell*, 196 Ill. 2d 343, 350 (2001). Only when charges of differing class offenses arise from "unrelated courses of conduct" may a court sentence a defendant to extended-term sentences on offenses in different classes. (Emphasis and internal quotation marks omitted.) *Id.*

¶ 26    The *Bell* court adopted the "single course of conduct" standard for determining whether a defendant is eligible for an extended-term sentence on a lesser charge.[1] *Id.* at 352. Under this standard, multiple offenses arise from unrelated courses of conduct—triggering extended-term eligibility—when there is a " 'substantial change in the nature of [defendant's] criminal objective.' " *Id.* at 351 (quoting 730 ILCS 5/5-8-4(a) (West 1998)).

¶ 27    Because the issue of defendant's extended-term eligibility was never raised at the trial level, the record is not well developed as to whether defendant's actions constituted a single course of conduct in that context. Though the trial court alluded to the issue in the context of consecutive sentencing, its comments—"[i]t appears to me that there were two separate offenses committed here. In a sense this may have been one course of conduct"—provide little guidance. The factual basis offered by the State at the plea hearing only established that defendant attacked Reuter sometime after Zimmerlein's call for help. As the State does not contest defendant's assertion that he was not extended-term eligible, we will assume, for the sake of argument, that defendant was not extended-term eligible.

¶ 28    We next turn to the question of whether the trial court erroneously believed defendant to be eligible for extended-term sentencing on his aggravated battery conviction. Initially, we note that it is often repeated that "[a] trial court's misapprehension of a minimum sentence necessitates a new sentencing hearing when it appears that the trial court's misunderstanding arguably influenced the sentencing decision." *People v. Hurley*, 277 Ill. App. 3d 684, 687 (1996) (citing *People v. Eddington*, 77 Ill. 2d 41, 48 (1979)). In discussing whether a trial court's misapprehension of a sentencing range warrants a new sentencing hearing, cases such as *Hurley* and *Eddington* amalgamate the issue of error and prejudice. See, *e.g.*, *People v. Nuno*, 206 Ill. App. 3d 160, 165 (1990) (noting that only prejudicial error is reversible). In other words, those cases consider whether the trial court had such a misapprehension, *as well as* whether that misapprehension influenced the sentence—*i.e.*, whether the defendant was prejudiced. Applying the plain-error rubric, we initially need only consider whether the trial

---

[1]The standard is the same applied under section 5-8-4 of the Unified Code of Corrections to determine the aggregate maximum and minimum sentences when consecutive sentences are imposed. See 730 ILCS 5/5-8-4(f)(2) (West 2010).

court clearly or obviously erred by mistakenly believing defendant was extended-term eligible. See *Piatkowski*, 225 Ill. 2d at 565. Defendant bears the burden of establishing prejudice. See *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 29 After a thorough review of the record, we cannot find that the trial court was under the mistaken impression that defendant was extended-term eligible at the time that it sentenced defendant. While the trial court told defendant he was extended-term eligible prior to his guilty plea, defendant does not challenge his plea. Thirty-six days later, at sentencing, the court's only reference to an extended-term sentence was to note the *State's* belief that defendant was eligible.

¶ 30 We presume the trial court knows the law and applies it correctly. *E.g.*, *People v. Howery*, 178 Ill. 2d 1, 32 (1997). This presumption is bolstered here, as the trial court made explicit that it had independently reviewed relevant sentencing statutes. With respect to defendant's request for impact incarceration, the trial court stated: "I reviewed the statute regarding that. It would appear that the defendant technically is eligible for that." With respect to defendant's eligibility for consecutive terms, the court stated: "I reviewed 5-8-4(c) of the Correctional Code, and my reading of the Code does not require consecutive sentences." However, with respect to the State's assertion of extended-term eligibility, the trial court never stated that it agreed with the State.

¶ 31 The sentences the trial court ultimately imposed on defendant further support our conclusion. The court sentenced defendant to a term of four years' imprisonment for aggravated battery. This sentence fell in the upper middle of the 2-to-5-year standard range for a Class 3 felony. Had the trial court been under the impression that defendant was extended-term eligible, such that the effective sentencing range was between 2 and 10 years' imprisonment, the 4-year sentence would have been in the lower end of that range. The trial court made it clear how serious it took defendant's actions, emphasizing the extent and nature of the injuries, finding that the aggravating factors "clearly" outweighed those in mitigation and finding consecutive terms necessary to protect the public from defendant. Given the trial court's expressed opinions regarding defendant's offenses, it strains credulity to posit that the court then sentenced defendant to a lower-range sentence. It is far more plausible that the trial court, under the impression that the sentencing range was the nonextended, two-to-five years' imprisonment, sentenced defendant to a moderately high term.

¶ 32 In sum, the trial court's comments, as well as the ultimate sentence imposed, tend to indicate that the court, at the time of sentencing, did not believe defendant to be extended-term eligible. Accordingly, we find that the trial court did not commit a clear or obvious error.

¶ 33 Our finding that no clear or obvious error was committed in the present case obviates the need to proceed to further steps of plain-error analysis. *E.g.*, *People v. Jones*, 2014 IL App (3d) 121016, ¶ 36. We recognize that in our prior opinion in this case, we went on to find that even if error had been committed, that error was not structural in nature. Our supreme court subsequently directed us to vacate our judgment and reconsider in light of *People v. Clark*, 2016 IL 118845, a case in which it expanded the concept of structural error. However, because we find no plain error, we need not conduct a structural-error analysis, and *Clark* has no bearing on our ruling.

## B. Ineffective Assistance of Counsel

Defendant also argues that trial counsel provided ineffective assistance by failing to raise the issue of defendant's extended-term eligibility. Whether counsel provided ineffective assistance turns on the well-established two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). See also *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting the *Strickland* test in Illinois). To establish that counsel was ineffective, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) the defendant suffered prejudice as a result. *Strickland*, 466 U.S. at 687. The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Colon*, 225 Ill. 2d 125, 135 (2007).

To satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the present case, defendant would have to show that, had counsel objected to the proposition that defendant was extended-term eligible, a reasonable probability exists that defendant would have received a lesser sentence. We have already concluded above that the record does not support the notion that some mistaken belief by the trial court resulted in a greater sentence.

Defendant used a broken golf club to stab Reuter, who had come to her friend's aid. For this, defendant was sentenced only to a term of four years' imprisonment. This was despite a list of aggravating factors that the trial court found to greatly outnumber any mitigating factors. As discussed *supra*, the four-year sentence was not in the extended range, nor was it even the maximum allowable sentence within the standard sentencing range. We find no reasonable probability that the trial court could have been any more lenient in its sentencing.

## II. Great Bodily Harm

Defendant next contends that the trial court erred in considering the harm done to Zimmerlein as an aggravating factor at sentencing. Because "great bodily harm" is a necessary element of aggravated domestic battery,[2] defendant argues, consideration of the harm as an aggravating factor serves as an improper double enhancement. Whether a court relied on an improper factor at sentencing is a question of law that we review *de novo*. *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 15. The weight given to any aggravating factor, however, is a matter of the trial court's sound discretion and will not be disturbed absent an abuse of that discretion. See *People v. Gooch*, 2014 IL App (5th) 120161, ¶ 11.

In *People v. Saldivar*, 113 Ill. 2d 256 (1986), our supreme court addressed this issue directly. The court stated:

> "Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of any offense, *regardless of whether the offense itself deals with harm*, can have varying degrees of harm or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor." (Emphasis added.) *Id.* at 269.

---

[2] Aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2010)) is committed when "[a] person who, in committing a domestic battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement."

Furthermore, the court found:

> "[T]he severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.*" (Emphases in original.) *Id.*

¶ 41    The *Saldivar* court nevertheless found that the trial court, in sentencing the defendant for voluntary manslaughter, improperly considered the death of the victim as an aggravating factor. *Id.* at 272. Defendant relies on the result in *Saldivar*, rather than the supreme court's expression of the law, in making his argument here.

¶ 42    *Saldivar*, however, is distinguishable from the case at bar, just as the offense of voluntary manslaughter is distinguishable from aggravated domestic battery. The offense of voluntary manslaughter is plainly one in which the only harm caused—death—does not occur in varying degrees. Great bodily harm, on the other hand, can certainly exist in varying degrees. There is great bodily harm and then there is great bodily harm.

¶ 43    Apparently recognizing that "great bodily harm" may come in varying degrees, defendant argues that the harm he caused in the present case is not of a sufficient degree to merit consideration at sentencing. Defendant cites to *People v. Rader*, 272 Ill. App. 3d 796, 808 (1995), in support of the proposition that injuries must "far exceed" the statutory definition of great bodily harm in order to be properly considered as an aggravating factor. In *Rader*, the victim suffered from legal blindness, loss of hearing, partial paralysis, brain damage, and seizures.

¶ 44    We agree that the degree of great bodily harm must rise above a baseline level before a court may consider the harm as an aggravating factor. We do not agree, however, that the degree of harm suffered by the victim in *Rader* somehow sets that baseline. In the present case, defendant shattered Zimmerlein's arm with a golf club. Zimmerlein's own description of the injury, confirmed by medical reports, was graphic and compelling. The bone had failed to mend despite extensive treatment and therapy. Zimmerlein suffered from continued pain that affected her on a day-to-day basis, and the injury still required further surgery. The court's finding that Zimmerlein's injury constituted a degree of harm beyond what is required to fall under the aggravated domestic battery statute was neither an abuse of discretion, nor against the manifest weight of the evidence.

¶ 45                                    III. Mitigating Factors

¶ 46    Finally, defendant contends that the trial court erred by ignoring certain mitigating factors at sentencing, resulting in an excessive sentence. Specifically, defendant argues that the court failed to consider that defendant did not contemplate that his conduct would cause physical harm, nor did it consider his employment history or family ties. Defendant asks that we reduce his "excessive" sentence.

¶ 47    A trial court has broad discretion in sentencing a criminal defendant, and its sentencing decisions are given great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Such deference is necessary because the trial court is in a far better position than the reviewing court to weigh certain factors. " 'The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment

for that of the trial court merely because it would have weighed these factors differently.' " *Id.* at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' [Citation.]" *Id.* at 212 (quoting *Stacey*, 193 Ill. 2d at 210).

¶ 48 "There is a presumption that a trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). In the present case, defendant is unable to make such a showing. The trial court stated explicitly that it had reviewed all reports, statements, and the PSI. It also reviewed all factors in aggravation and mitigation, including those that it did not single out for extended discussion at the sentencing hearing. Each of the mitigating factors defendant identifies here as being ignored were, in fact, covered in the trial court's review.

¶ 49 We also note that defendant argues that his problems with alcohol should be considered in mitigation, as his intoxication at the time of the batteries prohibited him from contemplating the harm that he was inflicting. Alcohol abuse, however, may properly be considered as an aggravating factor. *People v. Scott*, 225 Ill. App. 3d 938, 941 (1992) ("A defendant's history of alcoholism may also be considered as evidence that his conduct is likely to recur."). Furthermore, defendant's PSI reveals that he is a serial batterer of women, having twice before been convicted of domestic battery. Everything considered, defendant received a more than fair sentence.

¶ 50                                        CONCLUSION
¶ 51 For the foregoing reasons, the judgment of the circuit court of Bureau County is affirmed.

¶ 52 Affirmed.