2023 IL App (1st) 180672-UB
No. 1-18-0672
Order filed March 20, 2023

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 00994 (01) |
| | ) | |
| BRANDON JACKSON, | ) | Honorable |
| | ) | Paula M. Daleo, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*: Reversed and remanded. The circuit court committed plain error by improperly focusing on the victim's traits as aggravating factors at sentencing and, having already announced a 55-year sentence for first-degree murder, adding five years.

¶ 2     The trial court hears an array of evidence or "factors" as it comes to know a defendant individually and assess the impact of a crime. But not all factors are proper to consider during the sentencing phase. For example, the trial court may not punish a defendant more or less severely owing to the victim having been an admirable person or a louse.

¶ 3    Jackson's sentencing hearing revealed his crimes' profound emotional toll on the victim's grieving family and friends. After hearing their accounts, the trial court summarized the experience as "heart-rendering." Against this backdrop, Jackson contends the trial court erred by considering an improper factor and capriciously increasing the first-degree murder sentence.

¶ 4    The trial court had a wealth of evidence to evaluate, yet improperly focused on the victim's personal traits. The trial court also gave no reason when, having already announced a 55-year sentence for first-degree murder, it tacked on five more years. Read as a whole, the record casts doubt on the fairness of the sentencing proceedings and the integrity of the judicial process. Accordingly, we reverse and remand for a new sentencing hearing.

¶ 5                                  Background

¶ 6    Jackson appears before us a second time. At the supreme court's direction (*People v. Jackson*, 2022 IL 127256, ¶ 75), we address an issue we had no need to reach before: whether Jackson should receive a new sentencing hearing. We recount those facts needed to understand Jackson's sentencing claims.

¶ 7    Cuauhtemoc Estrada rented the hall at a Veterans of Foreign Wars post for a family Christmas party. Though not a VFW member, Estrada was friendly with the commander, a fellow veteran, and wanted to join.

¶ 8    Rigoberto Anaya and Estrada's daughter Christina went to the VFW hall that evening. Before the couple made it inside, two men approached and demanded Anaya "give [them] all [his] shit." Both men had guns. Estrada came over and reached for his weapon, telling the men he was an officer. (Estrada worked as an investigator for the Cook County Sheriff's Office.) As soon as Estrada did so, one of the men shot him dead.

¶ 9    Estrada's son Daniel had gone outside to help Estrada. He saw Anaya and Christina "being held up" by two men. He watched as Estrada walked toward the two men to "see what was going on" when, suddenly, one of them shot Estrada. The two men then ran.

¶ 10    The State introduced evidence that Jackson told a friend, Ronald Jones Jr., "he had tried to rob somebody at the bar," but he "didn't mean to shoot the person." Jackson reportedly said someone had come out of the VFW with a gun, and Jackson "shot [his] gun at the victim." After listening to recordings of Jackson's phone calls from jail, officers located the gun.

¶ 11    The jury convicted Jackson of the first-degree murder and the attempted armed robbery of Anaya. The jury also convicted Jackson of proximately causing Estrada's death by personally discharging a firearm.

¶ 12    The trial court conducted a sentencing hearing where both parties presented substantial evidence in aggravation and mitigation.

¶ 13    The State presented certified copies of three prior convictions, officer testimony about Jackson's participation in two residential burglaries, and eight victim-impact statements. One of them, from Anaya, recounted Estrada encouraging him to join the Marines.

¶ 14    The State partly focused on Estrada's status as a veteran, citing a sentencing statute (730 ILCS 5/5-5-3.2(a)(27)).

> "Factor 27, the defendant committed the offense of first [-] degree murder against a person he knew or should have known was a veteran. Well, where did the defendant in his laziness go to commit this attempt armed robbery? A block from his house to the VFW Hall, the Veteran's [sic] of Foreign Wars. If I go to a Catholic church to commit an armed robbery, I'm pretty sure I know or should know I'm going to be robbing Catholics. If I go to a

Mosque, I know or should know I'm going to be robbing Muslims. You go to a VFW hall, you know or should know you are going to be robbing veterans."

¶ 15    The State argued the trial court should impose the maximum terms (60 years for first-degree murder; 15 years for attempt armed robbery) plus "whatever amount of years above that * * * for the firearm enhancement," which was 25 years to life.

¶ 16    In mitigation, Jackson's counsel submitted a 38-page packet summarizing and contextualizing Jackson's life, including many traumas. In addition, counsel presented letters on Jackson's behalf, some from extended family members who, by necessity, helped raise him.

¶ 17    Jackson's counsel argued the trial court should impose the minimum terms: 20 years for first-degree murder plus 25 years for the firearm enhancement and four years for the attempt armed robbery. When counsel added those numbers together as "59 years," the trial court interjected, "Your math is wrong." The correct number was 49 years.

¶ 18    The trial court announced it considered all the factors in aggravation and mitigation. It noted Estrada was like "a force of nature," having a "unique" ability to bring together friends, family, and neighbors. After summarizing its impression of Jackson's life of trauma and bad choices, the trial court said:

> "What is the right sentence here for everybody? That is my job to try to determine, to try to balance what I have heard about the defendant, his upbringing, his experiences in life, his choices that he made to the life of Mr. Estrada, who served this country—and I'm just making these comments. He served his country as a Marine. He serve[d] his country as a sheriff. He was a family man. He was a person who commanded respect from the people that he came into contact with.''

¶ 19    The trial court further said, "It's heart-rendering to hear the Victim Impact Statement from the family." It juxtaposed Estrada's family, whom the court characterized as "God-fearing people," with Jackson's family, who "tried [their] best" to prevent Jackson from "suffer[ing] the consequences" of his choices.

¶ 20    The trial court sentenced Jackson to 55 years in prison for first-degree murder and 5 years in prison for attempted robbery and then inquired of the State about the period of mandatory supervised release. The State answered but "interrupt[ed]" to ask whether the 55-year sentence included the firearm enhancement. The trial court replied, "Well, will that merge? I mean, it's the sentencing on the murder with the enhancement, right?"

¶ 21    The State indicated uncertainty as to whether the base sentence for the first-degree murder was 30 years or 55 years. The trial court replied, "Okay. Well, then, I guess what I would have to do is break this down. Because my sentence on the murder is the 55 years, which would then be 30 plus the enhancement of 25. That doesn't make sense."

¶ 22    Both parties then agreed the trial court should make explicit the underlying sentence apart from the enhancement. The trial court responded: "Then that's not the appropriate sentence. It would have—okay. So it would have to be 35 years on the murder plus 25 years on the enhancement plus 5 years on the attempt robbery." It agreed with the State that its "intent" was to sentence Jackson "60 at 100 percent and 5 at 50 percent."

¶ 23    The trial court further said, "I don't like the fact that I have to separate the 30, 25[.]" It worried whether some other court would later "reverse the enhancement part of this case[.]" It stressed, "[I]t is my intention that the defendant serve the 60 years on the murder. So that's clear."

The sentencing order reflects a 60-year sentence for first-degree murder to run consecutively with a 5-year sentence for attempted armed robbery, for 65 years in prison.

¶ 24    Jackson's counsel moved to reconsider his sentence, in part contending the trial court had no basis to "change[ ] its sentence from 55 years to 60 years on the murder" without presentation of additional evidence in aggravation or mitigation.

¶ 25    The trial court denied counsel's motion:

> "And it was my misunderstanding when I originally pronounced the sentence that the ruling had to be promulgated as a separate sentencing. One on the murder, one on the enhancement.
>
> "I think I made it very clear after I corrected myself, and that's where we got to the 60 years because I said 35 on the murder, 25 which was the minimum on the enhancement to get to the 60; that my feeling on this case was that if in the future somehow the legislature or the Supreme Court or somebody else who had to rule on the enhancement part of this sentence should reverse that, I think I made it pretty clear that I thought this murder should receive the 60[-]year penalty."

¶ 26                                    Analysis

¶ 27    Jackson challenges his sentences on two grounds he failed to preserve, invoking the plain-error doctrine. The first acknowledges he failed to object timely and later raised the issue in a motion to reconsider the sentence. The second contends he needed only include the issue in a motion to reconsider the sentence. We first decide whether errors occurred. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 28                        Improper Aggravating Factor

¶ 29    Jackson argues the trial court erred by considering the victim's personal traits as an aggravating factor. He stresses that before imposing the sentences, the trial court purported to "balance" Estrada's personal traits against Jackson's.

¶ 30    The State argues the trial court's remarks "were nothing more than a recitation of the evidence" at sentencing. At oral argument, the State conceded the trial court could not properly consider Estrada's personal traits as aggravating factors. But, the State contended, the record shows no "link" between the trial court's consideration of Estrada's personal traits and its weighing of aggravating factors.

¶ 31    Ordinarily, this court defers to the trial court's weighing of aggravating and mitigating factors. *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 15. We also presume the trial court made its sentencing decision using proper legal reasoning. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. Still, we review *de novo* whether a trial court relied on an improper sentencing factor, an issue of law. *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. We give no deference when the record affirmatively shows the trial court relied on an improper factor. *Id.*

¶ 32    The State concedes Estrada's personal traits are an inappropriate aggravating factor. "Consideration of a victim's personal traits is improper as long as those traits *as such* are what the trial court considers." *Mauricio*, 2014 IL App (2d) 121340, ¶ 17 (emphasis in original). "As it would be inappropriate to decrease a defendant's sentence if he [or she] took a somehow less-accomplished life, the law precludes a court from increasing a sentence based on the personal traits or personal qualities of a victim." *Id.* ¶ 26 (Hudson, J., specially concurring).

¶ 33    The State claims the trial court did not consider Estrada's personal traits as aggravating factors. We disagree. The record shows the State argued for near-maximum sentences relying

partly on Estrada's status as a veteran. Later, the trial court relied on this mischaracterization of law when imposing Jackson's sentences.

¶ 34    The State argued that Illinois law permits harsher sentences for a defendant who commits "first[-]degree murder against a person [they] knew or should have known was a veteran[.]" The sentencing statute the State cited says no such thing. See generally 730 ILCS 5/5-5-3.2 ("Factors in aggravation and extended term sentencing").

¶ 35    The victim's status as a veteran is one part of a two-part aggravating factor. The trial court may impose a more severe sentence when:

> "the defendant committed the offense of first [-] degree murder * * * against a person who was a veteran *and* the defendant knew, or reasonably should have known, that the person was a veteran performing duties as a representative of a veterans' organization." 730 ILCS 5/5-5-3.2(a)(27) (emphasis added).

¶ 36    The record contains no basis for the trial court to consider this factor in aggravation. Although Jackson shot Estrada outside a VFW post, Estrada was hosting a personal event, a family Christmas party. Estrada did not do so as a VFW "representative." Indeed, the post commander testified Estrada was not a VFW member. Moreover, nothing in the record suggests what Jackson knew, or reasonably should have known, about Estrada's relationship with the VFW.

¶ 37    Yet, the trial court considered Estrada's status as a veteran, "mirroring" the State's false aggravating factor. *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 14. Before imposing the sentences, the trial court stated its "job" required considering "the life of Mr. Estrada who served this country— and I'm just making these comments. He served his country as a Marine." Continuing in this way, Estrada also "serve[d] his country as a sheriff."

¶ 38    At the State's behest, the trial court did precisely what it should not have done: consider Estrada's personal traits. *Mauricio*, 2014 IL App (2d) 121340, ¶ 17. We ordinarily presume the trial court used proper legal reasoning (*Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8), but we cannot here. Instead, the record shows a mirroring between a factor the State concocted and a factor the trial court considered when imposing the sentences.

¶ 39    The trial court's reliance on this improper factor was especially stark. The trial court heard evidence of the impact of Estrada's military service. See *Mauricio*, 2014 IL App (2d) 121340, ¶ 19 (noting, "Although a trial court may rely on a crime's specific harm—the 'impact of the victim's death—it may not rely on the victim's mere status."). In his victim-impact statement, Anaya recounted Estrada encouraged him to join the Marines. Yet the trial court focused on the value of Estrada's military service to "this country."

¶ 40    We acknowledge Estrada's many admirable traits, including his military service. But the trial court's job precludes considering those traits as an aggravating factor. Likewise, it precludes "balanc[ing]" them against Jackson's personal traits. We reject as wordplay the State's contention the trial court did "nothing more than a recitation of the evidence" as it "balance[d] what it heard in both aggravation and mitigation." Considering Estrada's personal traits was error.

¶ 41                                    Arbitrary Sentencing

¶ 42    Jackson contends the trial court erred by increasing his first-degree murder sentence by five years at the end of the hearing, despite having heard no new evidence. The State acknowledges the trial court initially "intended to sentence [Jackson] to 55 years" but asserts it "misspoke originally and corrected itself" by later imposing a 60-year term. We agree with Jackson.

¶ 43    The trial court acted arbitrarily—thus abused its discretion—when increasing the first-degree murder sentence. The record shows the trial court first scrutinizing the sentencing ranges while hearing the parties' contentions and then imposing a 55-year term. That is, the record shows the trial court had nothing to correct. The record also rebuts the trial court's later justification at the hearing on the motion to reconsider for suddenly imposing a 60-year term.

¶ 44    For Jackson's two convictions, two sentencing ranges applied. First, a range of 20 to 60 years for first-degree murder (730 ILCS 5/5-4.5-20(a)) and a minimum 25-year additional term for personally discharging a firearm that proximately caused death (*id.* § 5-8-1(a)(1)(d)(iii)). Second, for attempt armed robbery, 4 to 15 years. 720 ILCS 5/8-4 (defining punishment for attempt of Class X felony); 720 ILCS 5/18-2(b) (defining armed robbery with firearm as Class X offense). The law mandated the two terms run consecutively. 730 ILCS 5/5-8-4(d)(1).

¶ 45    The record shows the parties applying these sentencing ranges in arguing aggravation and mitigation and the trial court correcting Jackson's counsel's math. But, the trial court did not need to correct counsel because, generally, "consecutive sentences do not constitute a single sentence[.] Each conviction results in a discrete sentence that must be treated individually." *People v. Carney*, 196 Ill. 2d 518, 530 (2001). Still, the trial court apparently appreciated that counsel's misstatement might have some adverse effect and needed adjusting before announcing the sentences.

¶ 46    After hearing the parties argue and consistent with the sentencing strictures, the trial court meticulously imposed two discrete sentences, including 55 years for Estrada's shooting death:

> "Therefore, with regard to the murder case, the murder charge, I am sentencing you to 55 years in the Illinois Department of Corrections. With regard to the attempt robbery, I am sentencing you to 5 years in the Illinois Department of Corrections.

"55 years is to be served at 100 percent. 5 years, attempt robbery is a 50 percent case."

¶ 47    The record shows the confusion that occurred at this point was the State's. The State "interrupt[ed]" to ask whether the 55-year sentence included the firearm enhancement. The trial court saw no reason for the State's confusion and replied, "I mean, it's the sentencing on the murder with the enhancement, right?"

¶ 48    But after again indulging the State's apparent confusion, the trial court switched gears and asserted the 55-year term no longer "ma[d]e sense." The trial court then imposed a 60-year term.

¶ 49    So, what changed? The parties offer differing accounts.

¶ 50    Jackson says, in effect, nothing changed. He notes that the trial court pointed to no new information—statutory or non-statutory factors—when increasing this sentence. The State contends the trial court "corrected itself," though the State also acknowledges the trial court initially "intended" to impose the 55-year term.

¶ 51    The trial court claimed, "And it was my misunderstanding when I originally pronounced the sentence that the ruling had to be promulgated as a separate sentencing. One on the murder, one on the enhancement."

¶ 52    Jackson has the correct reading. The record confirms Jackson's contention that the trial court pointed to no new information before increasing his sentence. The State has identified no mistake the trial court made before purporting to correct itself. And the record rebuts the trial court's after-the-fact reason for adding five years to Jackson's murder sentence. The record shows that when the trial court originally pronounced the sentence for first-degree murder, it correctly understood the sentence to encompass the firearm add-on.

¶ 53    The upshot is the trial court abused its discretion. Although the scope of the trial court's discretionary powers is broad (*People v. Alexander*, 239 Ill. 2d 205, 212 (2010)), it acted beyond those limits. See *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). We do not question the general power to impose 60 years for a shooting death. Rather, we find the trial court's sudden addition of 5 years to a 55-year term reflects capriciousness, not reasoned judgment. *Lewis*, 234 Ill. 2d at 48. The trial court erred by arbitrarily increasing Jackson's sentence for first-degree murder.

¶ 54                                    Plain Error

¶ 55    Having found the trial court erred twice when imposing Jackson's sentences, we address whether to remand for a new sentencing hearing. Seeking that relief, Jackson invokes the plain-error doctrine, arguing the two errors "denied [him] a fair sentencing hearing" and "undermined [the] integrity of the judicial process," respectively.

¶ 56    The plain-error doctrine provides exceptions to the general rule that reviewing courts will not address issues a party failed to preserve. *Lewis*, 234 Ill. 2d 32, 42. Relevant here, one exception allows this court to consider unpreserved errors when "a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.*, at 42-43 (quoting, *People v. Piatkowski*, 225 Ill.2d 551, 565 (2007)) (internal citation omitted). The party invoking this exception carries the burden of persuasion. *Id.*, at 43.

¶ 57    Before we analyze whether Jackson carried his burden, we address his contention that he preserved review of the second error by "argu[ing] in the motion to reconsider sentence that the court erred by adding these five years[.]" "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are

required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). The record shows Jackson did not object at the sentencing hearing when the trial court imposed a 60-year term. Thus, he failed to preserve this issue. But see *People v. Rathbone*, 345 Ill. App. 3d 305, 308-11 (2003) (discussing why Illinois law requires defendants to raise sentencing errors in written motions).

¶ 58    That does not end our analysis. Well-settled law provides that the State may forfeit a forfeiture argument by failing to argue it timely. *People v. Williams*, 193 Ill. 2d 306, 347 (2000). The State does not contend that Jackson forfeited this issue for review, and so the State forfeits the forfeiture argument. Moreover, because the general rule of forfeiture is "an admonition to the parties and not a limitation on the jurisdiction of this court," we may choose to review the second error under the plain-error doctrine. *People v. McCarty*, 223 Ill. 2d 109, 142 (2006).

¶ 59    We do so and find Jackson carried his burden. The centrality of the improper "balanc[ing]" to the trial court's decision-making undermined the fairness of the sentencing proceedings. Likewise, the arbitrariness of the trial court's reasoning in support of the 60-year term undermined the integrity of the proceedings.

¶ 60    The trial court acknowledged considering the victim-impact statements. And the record shows the profound effect the statements made on the trial court. Indeed, it described the experience of hearing those statements, some read aloud by family members, as "heart-rendering." But the record shows the centrality of the trial court's improper "balanc[ing]" to its sentencing decisions.

¶ 61    The core of the trial court's analysis focused on balancing Estrada's traits against what it had heard of Jackson's life. The trial court framed its pronouncement by contrasting the lives of both men. And speaking directly to Estrada's family members, juxtaposed Estrada's family, whom

it characterized as "God-fearing people," with Jackson's family, whom it characterized as "tr[ying] [their] best" to prevent Jackson from "suffer[ing] the consequences" of his choices. The trial court asserted its "job" was "to try to balance what I have heard about the defendant" with "the life of Mr. Estrada who served this country[.]" Read as a whole, the record casts doubt on the fairness of the sentencing proceedings.

¶ 62    Likewise, the record casts doubt on the integrity of the proceedings. "The integrity of the judicial process is also affected when a decision is not based on applicable standards and evidence[] but appears to be arbitrary." *Lewis*, 234 Ill. 2d at 48. Again, the trial court gave no reason when suddenly increasing Jackson's sentence for first-degree murder by five years. Moreover, at the hearing on the motion to reduce the sentence, the trial court gave a reason, but the record rebuts it.

¶ 63    Reversed and remanded.