# Illinois Official Reports

## Appellate Court

---

### *People v. Sturgeon*, 2019 IL App (4th) 170035

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD E. STURGEON, Defendant-Appellant. |
| District & No. | Fourth District Docket No. 4-17-0035 |
| Filed | April 12, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Logan County, No. 16-CF-9; the Hon. William G. Workman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Joshua M. Bernstein, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jonathan Wright, State's Attorney, of Lincoln (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Presiding Justice Holder White and Justice Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1      In February 2016, the State charged defendant, Donald E. Sturgeon, with (count I) unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 900 grams or more of a substance containing methamphetamine, (count II) aggravated unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 400 grams or more of a substance containing methamphetamine and the manufacturing occurred within 1000 feet of a school, (count III) unlawful possession of methamphetamine precursors, and (count IV) unlawful possession of methamphetamine with the intent to deliver. 720 ILCS 646/15(a)(2)(E), 15(a)(2)(D), 15(b)(1)(H), 20(a)(2)(C), 55(a)(2)(A) (West 2016).

¶ 2      In September 2016, a jury found defendant not guilty of count I but guilty of counts II, III, and IV. In November 2016, the trial court sentenced defendant to 45 years in prison for count II, 45 years in prison for count III, and 14 years in prison for count IV and ordered the sentences to run concurrently.

¶ 3      Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt for aggravated participation in the manufacture of 400 or more grams of methamphetamine within 1000 feet of a school, (2) he received ineffective assistance of counsel, (3) the trial court erred during sentencing by considering his drug addiction as an "aggravating" factor, (4) the trial court erred by "punishing" him for going to trial after he rejected the State's guilty plea offer, and (5) the trial court erred by not identifying various fines and fees which it imposed. We affirm.

## I. BACKGROUND
### A. The Charges Against Defendant

¶ 6      In February 2016, the State charged defendant with (count I) unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 900 grams or more of a substance containing methamphetamine, (count II) aggravated unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 400 grams or more of a substance containing methamphetamine and the manufacturing occurred within 1000 feet of a school, (count III) unlawful possession of methamphetamine precursors, and (count IV) unlawful possession of methamphetamine with the intent to deliver. *Id.*

### B. The Rule 402 Conference

¶ 8      In August 2016, the trial court conducted a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012) ("Upon request by the defendant and with the agreement of the prosecutor, the trial judge may participate in plea discussions.").

¶ 9      At the conference, in exchange for defendant's pleading guilty to count I, the State offered to dismiss counts II, III, and IV and agree to a 25-year prison sentence. The trial court noted that based upon the information in the complaint and defendant's prior criminal history, the court was "more inclined to sentence [defendant] in the extended term range of at least 30 years, if not more." Ultimately, defendant rejected the State's offer, and a jury trial was conducted.

¶ 10                               C. The Jury Trial

¶ 11                            1. *Sergeant Robert Sherren*

¶ 12     In September 2016, at defendant's jury trial, Sergeant Robert Sherren of the Lincoln Police Department testified that defendant and Ashley Davis were suspected of using and manufacturing methamphetamine. Sherren stated that on the evening of January 14, 2016, he saw a vehicle pull into the driveway of the residence located at 1006 7th Street, Lincoln, Illinois (hereinafter the residence). Sherren observed defendant get out of the vehicle and ordered him to get on the ground. Sherren stated that defendant "took off running" but that Sherren caught him a few moments later. Sherren testified that defendant had "thrown an object" during the chase and that a jar containing a white powdery substance was later found where the chase had occurred. Sherren stated that after defendant was subdued, he was handcuffed and placed into the back of a police car. Sherren testified that another officer believed he smelled methamphetamine at the residence.

¶ 13     On cross-examination, Sherren noted that Brandon Lovelett and Robyn Johnson lived at the residence and that Rodney Lovelett was the brother of Brandon Lovelett. Sherren stated that when he pulled into the driveway, one of the Lovelett boys was in the driveway.

¶ 14                            2. *Officer Ryan Sullivan*

¶ 15     Officer Ryan Sullivan, a patrol officer with the Lincoln Police Department, stated that he was investigating activities related to methamphetamine manufacturing on January 14, 2016. Sullivan testified that, after a vehicle pulled into the residence, defendant ran out of the vehicle and Sherren caught him. Sullivan further testified that he then searched defendant and found "a clear plastic sandwich bag with multiple white pills." He stated that there were approximately 50 pills, and he found no evidence of a prescription.

¶ 16                              3. *Rodney Lovelett*

¶ 17     Rodney Lovelett testified that he was currently in custody and had five pending criminal charges against him, including conspiracy to manufacture methamphetamine, unlawful possession of drug paraphernalia, and unlawful possession of hypodermic needles. He stated that he had a prior conviction for threatening a public official and, in January 2016, he was on parole for that offense.

¶ 18     Rodney testified that in April 2016, he entered into a cooperation agreement with the State. In exchange for his testimony, he would plead guilty to a new charge of unlawful possession of methamphetamine precursors and that the charge for methamphetamine conspiracy would be dismissed. He noted that he would receive a 5½-year prison sentence.

¶ 19     Rodney stated that both he and Brandon, his brother, were arrested on January 14, 2016. Rodney testified that Brandon and Robyn Johnson were living at the residence in January 2016. Rodney stated that he used to live at the residence but had recently moved out prior to defendant's arrest. Rodney described the general layout of the residence.

¶ 20     Rodney admitted that he used heroin and methamphetamine on January 14, 2016. He testified that defendant had given him the methamphetamine and prevented him from entering a room where methamphetamine was later discovered. Rodney further testified that he told the police that there might be a methamphetamine lab in the residence after defendant was arrested.

¶ 21 On cross-examination, Rodney admitted to being a drug addict and that using drugs altered his thoughts and perception. He also admitted that he did not originally implicate defendant. Rodney testified that he had never been to prison and did not want to go there. He noted that he was originally charged with a Class X felony with a 15-year minimum, 60-year maximum sentence that would be served at 75%. He further noted that as a result of his cooperation agreement, he would be sentenced only to 5½ years in prison, to be served at 50%.

¶ 22                                          4. *Ashley Davis*

¶ 23 Ashley Davis stated that she was currently in custody and that she entered into a cooperation agreement with the State in September 2016. She noted that as a result of the agreement, she would plead guilty to unlawful possession of a methamphetamine precursor and that the State would dismiss a methamphetamine conspiracy charge.

¶ 24 Davis noted that on January 14, 2016, she had used methamphetamine with defendant in a bedroom at the residence. She stated that the bedroom had Gatorade bottles and funnels. She testified that later that day, she observed defendant placing methamphetamine into little plastic bags. She further stated that later that evening, she and defendant were arrested at the residence.

¶ 25 On cross-examination, Davis conceded that she was a methamphetamine addict and that she used methamphetamine on January 14, 2016. She noted that she did not implicate defendant until August 2016. She conceded that as a result of her September 2016 cooperation agreement with the State, the amount of time she would spend in prison had been drastically reduced.

¶ 26                                *5. Special Agent Brian Hayes*

¶ 27 Brian Hayes testified that he was a special agent with the Illinois State Police and was assigned to the Methamphetamine Response Team. Hayes stated that he was dispatched to the residence. He stated that in one of the bedrooms, he found sulfuric acid, lye, salt, tubing, pliers, stripped lithium batteries, Gatorade bottles, camp fuel, funnels, coffee filters, and a box of cold packs. Hayes testified that, based on his experience, these materials were commonly used in the production of methamphetamine.

¶ 28 Hayes testified that he found two methamphetamine "cooks" at the residence. Hayes noted that he found a Gatorade bottle in a bedroom, which he believed was used for making methamphetamine. Hayes stated that he weighed the substance inside the bottle and photographed the weighing process. Pictures that the trial court admitted into evidence purported to show that the substance inside the bottle weighed 550.3 grams. Hayes stated that he took a representative sample of the substance but that the remainder of the substance was destroyed pursuant to safety protocol. A picture of the representative sample was introduced into evidence as State's exhibit 34. Regarding how he weighed the substance, Hayes testified as follows on direct examination:

"Q. Did you seek to weigh the contents of that [bottle]?
A. Yes.
Q. How do you go about doing that?
A. I take a—I get my scale out. I check the internal components of it with weights. Then I take a sterile vessel. I will place it on the scale, record the weights on a ***

worksheet, as well as photograph it. Then I will empty the contents of the bottle into that same vessel and record that weight, subtract the empty weight from the total weight, which gives me my net weight of the contents.

Q. You did that in this case with this [bottle]?

A. Correct.

* * *

Q. And you calibrated this machine before you used it?

A. Not necessarily calibrated it, but I just checked it against the known weights."

¶ 29 Hayes stated that he found additional bottles in a bathroom that he believed contained methamphetamine. Pictures that the trial court admitted into evidence purported to show that the substance inside the bottles weighed 560.9 grams. Hayes stated that he took a representative sample of the substance but that the remainder was destroyed for safety purposes. A picture of this representative sample was introduced into evidence as exhibit 38.

¶ 30 On cross-examination, Hayes noted that he did not attempt to lift fingerprints from the crime scene. Defense counsel did not cross-examine Hayes regarding how he ensured that the scale he used to weigh the substance was working properly.

¶ 31 6. *Inspector Joseph Meister*

¶ 32 Inspector Joseph Meister of the Lincoln Police Department testified that he found defendant's state identification card in the bedroom where methamphetamine was found. Meister stated that he also found an electric grinder that had pseudoephedrine residue inside it.

¶ 33 Meister testified that the residence was "about 609 feet" away from Jefferson Elementary School. However, Meister never testified how he determined the distance between the residence and the elementary school. Instead, his only testimony regarding that distance was as follows:

"Q. As part of your investigation in this case, did you investigate whether 1006 7th Street [Lincoln, Illinois,] was in proximity to any locations that are considered to be an aggravating factor?

A. Yes, I did.

Q. And what did your investigation reveal?

A. I learned that [the residence] at 1006 7th Street was about 609 feet from the Jefferson Elementary School.

Q. And the address of that school is 710 5th Street [Lincoln, Illinois]?

A. Yes."

¶ 34 The parties later stipulated that Jefferson Elementary School was an active school as of January 14, 2016. However, the parties did not stipulate that the residence was within 1000 feet of the school. Defense counsel did not cross-examine Meister regarding how he measured the distance between the residence and the school.

¶ 35 7. *Christie Dostal*

¶ 36 Christie Dostal, a forensic scientist with the Illinois State Police Forensic Science Center, testified that she analyzed substances found at the residence for the presence of controlled substances. Dostal testified that the substance depicted in exhibit 34 weighed 3 grams and

tested positive for methamphetamine. She further testified that the substance depicted in exhibit 38 weighed 5.2 grams and tested positive for methamphetamine. Dostal, who was permitted to testify as an expert witness, also testified how she calibrated her scale:

"Q. Describe how you weighed the samples?

A. When I weigh the sample, I place a weighing dish on my balance. I then zero my balance, and then I then add the sample to the weighing dish and record the weight.

Q. And maybe you mentioned it, but did you calibrate that machine or certify that it is working properly in terms of weight?

A. Yes. Once a week we use a standard set of weights to check to make sure that the balance is weighing properly."

¶ 37                                     8. *Closing Arguments*

¶ 38        The State rested following Dostal's testimony. Defendant declined to testify and presented no evidence. During closing argument regarding counts I and II, defense counsel argued at length about the credibility of Ashley Davis and Rodney Lovelett. In essence, defense counsel argued that these two individuals were not credible because they were drug addicts and received generous cooperation agreements from the State. Defense counsel further highlighted that Brandon Lovelett and Robyn Johnson, the individuals who lived at the residence, did not testify. Defense counsel also argued that Rodney was further biased because his brother lived at the residence in which the methamphetamine lab was found.

¶ 39        Defense counsel further argued that the State failed to prove that defendant was responsible for the methamphetamine manufacturing, arguing in part as follows:

"[The State is] trying to say, I suppose, that [defendant] is in control of this meth lab, in control of it all. He's the man. Did you hear one witness, one, come in and say that [defendant] was cooking meth in his meth lab? *** That he had experience, that he could do all of this stuff? Not one witness. Not one."

¶ 40        In closing argument, defense counsel did not specifically mention (1) Hayes's testimony regarding the accuracy of the scale or (2) Meister's testimony regarding the distance between the residence and the school. However, counsel did argue that there were "unanswered questions" and "inconsistencies" in the State's evidence. In pertinent part, counsel argued as follows:

"[Defendant] is presumed innocent right now, presumed innocent right now. Burden of proof is on the State to prove beyond a reasonable doubt. There are, when you dig a little bit, dig a little bit, so many unanswered questions, so many inconsistencies, so many flaws in the State's evidence. Unless you just want to assume or do some guesswork, there is reasonable doubt all over this case, ladies and gentlemen.

I ask that you strictly scrutinize the evidence. You take some time, as much time as it takes, and collectively review the evidence; and I believe when you do and you scratch below the surface, and you really dig into it, I believe the appropriate verdict, a verdict that is consistent with the evidence in this case, is a verdict of not guilty."

¶ 41        Counsel concluded by arguing that the State failed to prove defendant guilty of any of the charges against him.

### 9. *The Jury's Verdict*

The jury found defendant not guilty of unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 900 grams or more of a substance containing methamphetamine (count I). 720 ILCS 646/15(a)(2)(E) (West 2016).

However, the jury found defendant guilty of three offenses: (1) aggravated unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 400 grams or more of a substance containing methamphetamine and the manufacturing occurred within 1000 feet of a school (count II), (2) unlawful possession of methamphetamine precursors (count III), and (3) unlawful possession of methamphetamine with the intent to deliver (count IV). *Id.* §§ 15(a)(2)(D), 15(b)(1)(H), 20(a)(2)(C), 55(a)(2)(A).

### D. The Sentencing Hearing

In November 2016, the trial court conducted a sentencing hearing at which the State requested a 40-year sentence on count II, a 30-year sentence on count III, and a 14-year sentence on count IV. In support of this request, the State highlighted defendant's prior convictions and noncompliance with parole. Defense counsel requested a sentence "closer to the 20-year timeframe" based upon defendant's history of drug addition, his poor upbringing, and his lack of family support.

The trial court sentenced defendant to 45 years in prison on count II, 45 years in prison on count III, and 14 years in prison on count IV, and ordered the sentences to run concurrently. In support of these sentences, the court highlighted defendant's criminal history and the need for deterrence. In response to defendant's argument that he was a drug addict, the court noted that defendant had previously failed to take advantage of prior opportunities for drug addiction counseling while he was in prison. Last, the court also assessed various fines and fees against defendant.

This appeal followed.

### II. ANALYSIS

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt for aggravated participation in the manufacture of 400 or more grams of methamphetamine within 1000 feet of a school, (2) he received ineffective assistance of counsel, (3) the trial court erred during sentencing by considering his drug addiction as an "aggravating" factor, (4) the trial court erred by "punishing" him for going to trial after he rejected the State's guilty plea offer, and (5) the trial court erred by not identifying various fines and fees which it imposed. We address these arguments in turn.

### A. Defendant's Argument That the Evidence Was Not Sufficient

Defendant first argues that the State failed to prove beyond a reasonable doubt that he participated in the manufacture of 400 or more grams of methamphetamine within 1000 feet of a school. To convict defendant of this offense, the State was required to prove beyond a reasonable doubt that (1) defendant knowingly participated in the manufacture of a substance containing methamphetamine, (2) the weight of the substance containing methamphetamine weighed 400 grams or more, and (3) the participation took place within 1000 feet of real

property comprising a school. Defendant concedes that the State proved the first proposition but argues it failed to prove the propositions related to weight and distance. We disagree.

¶ 53                                 1. *The Standard of Review*

¶ 54    The State bears the burden of proving each element of an offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. When a defendant challenges his conviction arguing that the evidence was not sufficient to prove him guilty, a reviewing court must (1) consider all of the evidence in the light most favorable to the State and (2) determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48, 1 N.E.3d 888.

¶ 55    "It remains the firm holding of this court that the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228, 920 N.E.2d 233, 242 (2009). "It is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. "Accordingly, a reviewing court will not substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. McGath*, 2017 IL App (4th) 150608, ¶ 26, 83 N.E.3d 671.

¶ 56    A reviewing court will not reverse a defendant's conviction "simply because there is contradictory evidence or because the defendant claims a witness was not credible." *People v. Mendez*, 2013 IL App (4th) 110107, ¶ 17, 985 N.E.2d 1047. Instead, a reviewing court will reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *People v. Daniels*, 2016 IL App (4th) 140131, ¶ 94, 58 N.E.3d 902.

¶ 57                     2. *Enhancing Factors Based Upon Weight and Location*

¶ 58    The Methamphetamine Control and Community Protection Act (Act), as it existed at the time of the offense, stated that it was "unlawful to knowingly participate in the manufacture of methamphetamine with the intent that the methamphetamine or a substance containing methamphetamine be produced." 720 ILCS 646/15(a)(1) (West 2016). A defendant who participated in the manufacture of 400 or more grams but less than 900 grams of methamphetamine or a substance containing methamphetamine was guilty of a Class X felony and subject to a term of imprisonment of 12 to 50 years. *Id.* § 15(a)(2)(D). The Act further provided that an individual committed aggravated participation in methamphetamine manufacturing if "the methamphetamine manufacturing occurs within 1,000 feet of a place of worship or parsonage, or within 1,000 feet of the real property comprising any school." *Id.* § 15(b)(1)(H). If an individual was convicted of aggravated participation in the manufacture of 400 grams or more of methamphetamine, he was guilty of a Class X felony and subject to a term of imprisonment of not less than 15 years and not more than 60 years. *Id.* § 15(b)(2)(D).

¶ 59                          3. *Sufficiency of the Evidence: Weight*

¶ 60    Defendant argues that the State failed to prove beyond a reasonable doubt that he participated in manufacturing 400 or more grams of methamphetamine because Hayes did not "calibrate" his scale. We disagree.

¶ 61        In this case, Hayes testified that he weighed two methamphetamine "cooks," which respectively weighed 550.3 and 560.9 grams. Regarding how he weighed the first "cook," Hayes testified as follows:

"Q. Did you seek to weigh the contents of that [bottle]?

A. Yes.

Q. How do you go about doing that?

A. I take a—I get my scale out. I check the internal components of it with weights. Then I take a sterile vessel. I will place it on the scale, record the weights on a *** worksheet, as well as photograph it. Then I will empty the contents of the bottle into that same vessel and record that weight, subtract the empty weight from the total weight, which gives me my net weight of the contents.

Q. You did that in this case with this [bottle]?

A. Correct.

* * *

Q. And you calibrated this machine before you used it?

A. *Not necessarily calibrated it, but I just checked it against the known weights*." (Emphasis added.)

¶ 62        We first note that the jury had the responsibility, not this court, to determine Hayes's credibility and the reasonable inferences to be drawn from his testimony. *McGath*, 2017 IL App (4th) 150608, ¶ 26. Certainly, based on Hayes's testimony, a jury *could* have found that the scale was not calibrated and therefore any resulting measurement was invalid. However, as shown by the jury's verdict, the jury in *this case* found that the scale was working correctly and that Hayes's testimony was credible. This court will not substitute its judgment for that of the jury on questions involving the weight of the evidence or the credibility of the witnesses. *Id.* Moreover, the testimony of a single witness, if positive and credible, is sufficient to prove a defendant guilty beyond a reasonable doubt. *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 63        Second, this court must consider all of the evidence in the light most favorable to the State. *Brown*, 2013 IL 114196, ¶ 48. In this case, Hayes stated that he "checked [the scale] against the known weights." Christie Dostal, a forensic scientist tendered as an expert witness, later testified that she ensured that her scale was working by using "a standard set of weights to make sure that the [scale] is weighing properly." Dostal's expert testimony essentially endorsed Hayes's lay testimony regarding how he ensured that his scale was working properly. When Hayes's testimony is considered in the light most favorable to the State, a reasonable jury could find the essential elements of the crime beyond a reasonable doubt. *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 64        We add that the testimony of Hayes upon which defendant relies in support of this argument is inherently ambiguous. That is, a jury could reasonably find that the steps Hayes described in his testimony regarding his efforts to ensure the scale was accurate constituted "calibrating the machine." Yet, when Hayes was specifically asked if he calibrated the machine before he used it, he responded, "Not necessarily calibrated it, but I just checked it against the known weights." We note that neither the prosecutor nor defense counsel asked Hayes to clarify this answer.

¶ 65        Part of the difficulty in understanding Hayes's testimony on this matter is uncertainty regarding the term "calibrated." That is, what did Hayes understand that term to mean and was

his understanding of that term commonly shared by the public—in this case, the jury? Further, Hayes's qualifying his answer by using the adverb "not necessarily" causes additional uncertainty as to what he meant.

¶ 66　Given that the State needed to prove this element of weight beyond a reasonable doubt, the prosecutor could have—and should have—asked Hayes to clarify his testimony. In the absence of that clarification, defense counsel might have argued in closing that Hayes's testimony was too uncertain to warrant a guilty verdict, or the jury might have reached that conclusion on its own. And we note that defense counsel did make this argument (although somewhat obliquely) when he asserted in closing argument that there were "so many unanswered questions, so many inconsistencies, so many flaws" in the State's case.

¶ 67　In any event, for the reasons previously stated, we conclude that the jury could have found Hayes's testimony sufficient to prove that the weight of the substance containing methamphetamine weighed 400 grams or more.

¶ 68　　　　　　　　　4. *Sufficiency of the Evidence: Distance*

¶ 69　Defendant next argues that the State failed to prove beyond a reasonable doubt that the residence was within 1000 feet of a school. 720 ILCS 646/15(b)(1)(H) (West 2016). We disagree.

¶ 70　In this case, Inspector Meister testified that the residence was "about 609 feet" away from Jefferson Elementary School. However, as shown below, Meister never testified how he determined the distance between the residence and the school:

> "Q. As part of your investigation in this case, did you investigate whether 1006 7th Street [Lincoln, Illinois,] was in proximity to any locations that are considered to be an aggravating factor?
>
> A. Yes, I did.
>
> Q. And what did your investigation reveal?
>
> A. I learned that [the residence] at 1006 7th Street was about 609 feet from the Jefferson Elementary School.
>
> Q. And the address of that school is 710 5th Street [Lincoln, Illinois]?
>
> A. Yes."

¶ 71　We first note that the jury, not this court, was responsible for determining Meister's credibility. *McGath*, 2017 IL App (4th) 150608, ¶ 26. Certainly, based on Meister's rather limited testimony regarding distance, the jury *could* have found that the State had failed to establish the elements of the offense beyond a reasonable doubt. However, as shown by the jury's verdict, the jury *in this case* found Meister's testimony to be credible and sufficient and therefore found that the manufacturing occurred within 1000 feet of the school.

¶ 72　Second, we must consider all of the evidence in the light most favorable to the State. *Id.* Meister testified that the residence was "about 609 feet" away from the school. Defendant did not cross-examine Meister nor did he introduce any evidence that casts doubt upon Meister's testimony.

¶ 73　Before this court, defendant challenges Meister's testimony by raising the following questions: "How did Meister 'learn' that the school is 609 feet away? Did he use an instrument? If so, what instrument?"

¶ 74　　These are all legitimate questions that could have been pursued at trial by either the prosecutor or defense counsel but were not. So, this court, like the jury, must determine the meaning of Meister's testimony absent any helpful clarification.

¶ 75　　In construing Meister's testimony, we conclude that his response to the question, "And what did your investigation reveal," that he *learned* the residence "was about 609 feet" from the school does not necessarily imply this information was something Meister *was told* by a third party. Instead, in context, his response could mean—and probably did—that this distance of "about 609 feet" was something he "learned" as a result of his personal efforts.

¶ 76　　When Meister's testimony is considered in the light most favorable to the State, a reasonable jury could find the essential elements of the crime beyond a reasonable doubt. See *Siguenza-Brito*, 235 Ill. 2d at 228. Therefore, we affirm defendant's conviction because a reasonable jury could find beyond a reasonable doubt that defendant participated in the manufacture of 400 or more grams of methamphetamine within 1000 feet of a school. See *Daniels*, 2016 IL App (4th) 140131, ¶ 94.

¶ 77　　Although we have affirmed defendant's conviction, this is not an endorsement of the State's handling of this case. The State *should* have introduced more evidence to demonstrate that the residence was within 1000 feet of the school. Such evidence should have included a foundation for Meister's testimony, such as testimony regarding how he determined the distance between the residence and the school.

¶ 78　　　　　　　　　　　　B. Ineffective Assistance of Counsel

¶ 79　　Alternatively, defendant argues that his attorney was ineffective for failing to cross-examine (1) Meister regarding how he measured the distance and (2) Hayes regarding how he calibrated the scale. We disagree.

¶ 80　　　　　　　　　　　　　　1. *The Applicable Law*

¶ 81　　The sixth amendment guarantees a defendant the right to effective assistance of counsel at all critical stages of a criminal proceeding. U.S. Const., amend. VI; *People v. Hughes*, 2012 IL 112817, ¶ 44, 983 N.E.2d 439. To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was (1) deficient and (2) prejudicial. *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 61, 115 N.E.3d 1148.

¶ 82　　To establish deficient performance, a defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness. *Id.* ¶ 62. This court is highly deferential of counsel's performance. *McGath*, 2017 IL App (4th) 150608, ¶ 38. We use this deferential standard because there "are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

¶ 83　　The defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. *People v. Manning*, 241 Ill. 2d 319, 327, 948 N.E.2d 542, 547 (2011). Counsel's strategic choices are virtually unchallengeable on appeal. *Id.* at 333. Whether and how to conduct a cross-examination is generally a matter of trial strategy. *People v. Jackson*, 2018 IL App (1st) 150487, ¶ 26, 105 N.E.3d 996. The content of a closing argument is generally a matter of trial strategy. *People v. Shamlodhiya*, 2013 IL

App (2d) 120065, ¶ 15, 986 N.E.2d 204. To this point, the United States Supreme Court has reasoned as follows:

"[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should sharpen and clarify the issues for resolution by the trier of fact [citation], but which issues to sharpen and how best to clarify them are questions with many reasonable answers." (Internal quotation marks omitted.) *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003).

¶ 84    To establish prejudice, a defendant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Westfall*, 2018 IL App (4th) 150997, ¶ 63. A reasonable probability is a probability which undermines confidence in the outcome of the trial. *Id.*

¶ 85    A defendant's failure to satisfy either prong negates a claim of ineffective assistance of counsel. *People v. Fellers*, 2016 IL App (4th) 140486, ¶ 23, 77 N.E.3d 994. When a claim of ineffective assistance of counsel was not raised at the trial court, this court's review is *de novo*. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24, 42 N.E.3d 885.

¶ 86                                        2. *This Case*
¶ 87                      a. Defense Counsel's Performance Was Not Deficient
¶ 88    We first conclude that defendant fails to show that counsel's performance was deficient. In this case, defense counsel did not directly challenge the weight of the methamphetamine or the distance between the residence and the school. However, counsel argued that defendant was not responsible for manufacturing the methamphetamine. To this point, counsel argued as follows:

"[The State is] trying to say, I suppose, that [defendant] is in control of this meth lab, in control of it all. He's the man. Did you hear one witness, one, come in and say that [defendant] was cooking meth in his meth lab? *** That he had experience, that he could do all of this stuff? Not one witness. Not one."

¶ 89    If the jury found this argument persuasive (as it could have), it would have found defendant not guilty of manufacturing 400 or more grams of methamphetamine within 1000 feet of a school. Counsel could have reasonably concluded that a jury would find this argument more credible than explicitly arguing that the State failed to prove the weight of the methamphetamine or the distance between the residence and the school. We conclude this "all-or-nothing" argument was not an unreasonable trial strategy. See *Shamlodhiya*, 2013 IL App (2d) 120065, ¶¶ 16-25 (counsel's "all-or-nothing" closing argument that defendant was not guilty on grounds of self-defense and characterizing the possibility of involuntary manslaughter as a "compromised" verdict was not ineffective assistance of counsel).

¶ 90    Counsel also argued at length about the credibility of Davis and Rodney. Defense counsel emphasized they were drug addicts who, after receiving generous cooperation agreements from the State, testified against defendant. Davis and Rodney both admitted to using methamphetamine and other narcotics on the day of defendant's arrest. Their testimony was crucial to convict defendant of participation in drug manufacturing. We conclude that it was reasonable trial strategy for counsel to focus his efforts on attacking their credibility instead of

- 12 -

directly focusing on the weight of the methamphetamine and the distance between the residence and the school. We note again this strategic decision is "virtually unchallengeable" on appeal. *Manning*¸ 241 Ill. 2d at 333.

¶ 91 Furthermore, whether and how to cross-examine the State's witnesses is generally a matter of trial strategy. *Jackson*, 2018 IL App (1st) 150487, ¶ 26. Counsel could have reasonably concluded that (1) cross-examining Hayes regarding the weight of the methamphetamine and (2) cross-examining Meister regarding the distance between the residence and the school would serve no purpose other than to give the State an opportunity to strengthen its case on redirect examination.

¶ 92 Moreover, although defense counsel's closing argument did not explicitly mention Hayes's testimony regarding weight or Meister's testimony regarding distance, counsel did argue that the State's evidence was insufficient to prove defendant guilty beyond a reasonable doubt. Counsel argued there were "so many unanswered questions, so many inconsistencies, so many flaws in the State's evidence," and he encouraged the jury to "strictly scrutinize the evidence." Apparently, the jury ultimately rejected counsel's argument regarding the sufficiency of the State's evidence. Nonetheless, counsel had "wide latitude" regarding the style and substance of his closing argument. *Gentry*, 540 U.S. at 5-6. We conclude that defendant falls far short of demonstrating that his attorney's performance during closing argument fell below an objective standard of reasonableness.

¶ 93 In passing, we note that the jury found defendant not guilty of count I (unlawful participation in methamphetamine manufacturing in that defendant knowingly participated in the manufacture of 900 grams or more of a substance containing methamphetamine). This not guilty verdict on count I is evidence that counsel's strategy of attacking the credibility of Davis and Lovelett and arguing that defendant was not the individual responsible for methamphetamine manufacturing was reasonable.

¶ 94         b. Defendant Fails to Show That He Was Prejudiced by Counsel's Performance

¶ 95 Second, even if we were to assume that counsel's performance was deficient, we conclude that defendant fails to show that he was prejudiced by counsel's performance. For example, if counsel would have cross-examined Meister about how he determined distance, the State would likely have engaged in a lengthy redirect examination in which Meister would have testified about how he determined the residence was within 1000 feet of a school. Likewise, had counsel cross-examined Hayes about whether the scale was working accurately, this likely would have prompted a thorough redirect examination from the State during which Hayes could have testified about his experience and what efforts he took to ensure that the scale was working properly. In short, cross-examination as defendant suggests would have almost certainly resulted in the State introducing further evidence on redirect examination, thereby "tuckpointing" its case.

¶ 96 An experienced defense counsel might understand and appreciate the deficiencies in the State's presentation of the testimony of Hayes and Meister (which deficiencies we have already discussed) and choose—entirely appropriately—to not pursue cross-examination of these witnesses that would give the State the opportunity to present the additional information to the jury that the State should have provided in the first place. Accordingly, defendant's ineffective assistance of counsel claim fails.

¶ 97      Defendant's ineffective assistance of counsel claim also fails because defendant's claim of prejudice is entirely speculative. That is, defendant's argument is premised upon the claim that had defense counsel "appropriately" cross-examined Hayes and Meister, he would have forced them to disclose that their respective testimonies about weight and distance had flawed or no foundation. However, nothing in this record supports this claim. And, indeed, as we noted earlier, we suspect that counsel's efforts in this regard would have served only to "tuckpoint" the State's case.

¶ 98      We emphasize again that to establish prejudice, a defendant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Westfall*, 2018 IL App (4th) 150997, ¶ 63. The sort of speculation that defendant asks this court to engage in here falls far short of that requirement.

¶ 99                            C. Defendant's Drug Addiction

¶ 100      Defendant next argues that the trial court erred during sentencing because it considered his drug addiction as an "aggravating factor" rather than a "mitigating factor." We categorically reject defendant's argument.

¶ 101                            1. *The Applicable Law*

¶ 102      "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court has broad discretionary powers when selecting an appropriate sentence." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37, 99 N.E.3d 571. The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence. *Id.*

¶ 103      Whether the trial court relied upon an improper factor at sentencing is a question of law reviewed *de novo*. *People v. Arbuckle*, 2016 IL App (3d) 121014-B, ¶ 39, 60 N.E.3d 185. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. The defendant bears the burden to affirmatively establish that the sentence was based on an improper factor. *People v. Williams*, 2018 IL App (4th) 150759, ¶ 18, 99 N.E.3d 590. The appellate court will not reverse a sentence unless it is evident that the trial court relied upon an improper factor. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49, 38 N.E.3d 98.

¶ 104      The weight to be given to any *proper* factor, however, is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Id.* A sentence imposed within the statutory range provided by the legislature is presumed to be proper. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16. A trial court's sentence is an abuse of discretion only if it is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Arbuckle*, 2016 IL App (3d) 121014-B, ¶ 47.

¶ 105      The Unified Code of Corrections (Unified Code) (730 ILCS 5/1-1-1 *et seq.* (West 2016)) prescribes mitigating and aggravating factors that the trial court must consider when determining an appropriate sentence. *People v. Brunner*, 2012 IL App (4th) 100708, ¶¶ 43-45,

976 N.E.2d 27. Under the Unified Code, drug addiction is not an explicit factor in mitigation or aggravation. 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2016). Thus, the trial court is not required to view drug addiction as a mitigating factor. *People v. Madej*, 177 Ill. 2d 116, 139, 685 N.E.2d 908, 920 (1997). Instead, a history of substance abuse is a "double-edged sword" that the trial court may view as a mitigating or aggravating factor. *People v. Mertz*, 218 Ill. 2d 1, 83, 842 N.E.2d 618, 662 (2005). To this point, the Illinois Supreme Court has explained as follows:

> "[Defendant's] premise is that since drugs are partly to blame for his actions, the defendant is somehow less culpable and should not suffer the ultimate penalty for his criminal behavior. Simply stated, the sentencing judge was under no legal obligation to subscribe to this suggestion. To the contrary, the sentencing judge was free to conclude, under the circumstances, that defendant's drug history simply had no mitigating value but was, in fact, aggravating." *People v. Shatner*, 174 Ill. 2d 133, 160, 673 N.E.2d 258, 270 (1996).

¶ 106                                      2. *This Case*

¶ 107    In hyperbolic language, defendant argues that the trial court's "reliance on [defendant's] criminal history without acknowledging the patently obvious connection of these offenses to his substance abuse problem weaponized his addiction against him. It turned a mitigating factor into an aggravating factor." We reject defendant's argument.

¶ 108    First, we conclude that defendant's drug addiction is not a *per se* mitigating factor. See 730 ILCS 5/5-5-3.1 (West 2016). Instead, the trial court *may* view drug addiction as an aggravating factor, if it is so inclined. *Shatner*, 174 Ill. 2d at 160. Accordingly, the trial court did not "weaponize" defendant's addiction while sentencing him. Instead, the court could have properly concluded that defendant's drug addiction lessened his rehabilitative potential, increased the seriousness of the offense, increased the need to protect society, and increased the need for deterrence. *Id.*; see *Garcia*, 2018 IL App (4th) 170339, ¶ 37. Thus, we conclude that the trial court did not consider an improper factor when sentencing defendant. *Arbuckle*, 2016 IL App (3d) 121014-B, ¶ 39.

¶ 109    Second, although the trial court's sentence exceeded the State's request, the sentence was still within the statutory range provided by the legislature. See 720 ILCS 646/15(a)(2)(D) (West 2016). We also note that the trial court was not bound by the State's sentencing recommendation. *People v. Means*, 2017 IL App (1st) 142613, ¶ 16, 74 N.E.3d 43. Further, the court reasoned that defendant's prior criminal history and the need for deterrence required a longer criminal sentence. See *Garcia*, 2018 IL App (4th) 170339, ¶ 37. Based upon all of this, we conclude that the trial court's sentence was not an abuse of discretion. *Charleston*, 2018 IL App (1st) 161323, ¶ 16.

¶ 110                                    D. The "Trial Tax"

¶ 111    Defendant next argues that the trial court "improperly punished" him for exercising his right to trial. We disagree.

¶ 112                                1. *The Applicable Law*

¶ 113    A trial court may not punish a defendant for exercising his right to a trial. *People v. Johnson*, 2018 IL App (1st) 153634, ¶ 18, 107 N.E.3d 333. It must be "clearly evident" that a

harsher sentence resulted from a defendant's demand for a trial. *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. "This evidence can come when a trial court makes explicit remarks concerning the harsher sentence [citations], or where the actual sentence is outrageously higher than the one offered during plea negotiations [citation]." *Id.* However, "the mere fact that the defendant was given a greater sentence than that offered during plea bargaining does not, in and of itself, support an inference that the greater sentence was imposed as a punishment for demanding a trial." *People v. Carroll*, 260 Ill. App. 3d 319, 348, 631 N.E.2d 1155, 1174 (1992). In determining whether it is clearly evident that a harsher sentence resulted from a defendant's demand for a trial, the appellate court considers the record as a whole instead of focusing on isolated statements made by the trial court. *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26.

¶ 114 Illinois Supreme Court Rule 402(d)(1) (eff. July 1, 2012) states that the trial court "shall not initiate plea discussions." However, at the request of both the State and the defendant, the rule provides that the trial court "may participate in plea discussions." *Id.* At the end of the Rule 402(d) conference, the trial court "may make a recommendation as to what an appropriate sentence would be." *Id.*

¶ 115                                   2. *This Case*

¶ 116 Here, the trial court conducted a conference pursuant to Illinois Supreme Court Rule 402(d) (eff. July 1, 2012), in which in exchange for defendant's pleading guilty to count I, the State offered to dismiss counts II, III, and IV and agreed to a 25-year prison sentence. The trial court noted that based upon the information in the complaint and defendant's prior criminal history, the court was "more inclined to sentence [defendant] in the extended term range of at least 30 years, if not more." Ultimately, defendant rejected the State's offer and proceeded to trial. The trial court later sentenced defendant to 45 years in prison for count II, 45 years in prison for count III, and 14 years in prison for count IV and ordered the sentences to run concurrently.

¶ 117 We conclude that it is not "clearly evident" that the trial court punished defendant for exercising his right to a trial. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26. First, the trial court was not bound by the State's sentencing recommendation. *Means*, 2017 IL App (1st) 142613, ¶ 16. Second, it is not clearly evident that the trial court imposed a harsher sentence because of defendant's jury demand. Regarding the Rule 402(d) conference, the trial court stated that it was "inclined to sentence [defendant] in the extended term range of at least 30 years, if not more." The phrase "if not more" certainly includes the trial court's ultimate sentence of 45 years. Defendant fails to cite any other statement which could establish that the trial court punished him for exercising his right to a trial. Accordingly, we conclude that the trial court did not impose a harsher sentence as a result of defendant's demand for a jury trial. See *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 26.

¶ 118 In passing, we note that trial courts may avoid the issue raised in this appeal by declining to engage in Rule 402(d) conferences. Ill. S. Ct. R. 402(d) (eff. July 1, 2012). Rule 402(d) *permits* but does not *require* trial courts to engage in such conferences, and many experienced trial judges refuse to engage in such conferences because those judges deem them both unseemly and unnecessary. Experience also shows that the number of negotiated guilty pleas before such judges is no less than the number of negotiated guilty pleas arising from Rule 402(d) conferences.

¶ 119                                    E. Fines and Fees

¶ 120    Last, defendant argues we "should remand this matter with instructions to the trial court to identify and specify the elements of the 'Court Costs' imposed, as well as the statutory authority for those elements." Commendably, the State investigated this matter and concedes that the trial court improperly fined defendant $240. Defendant has accepted the State's concession. However, while this appeal was pending, the Illinois Supreme Court promulgated Illinois Supreme Court Rule 472 (eff. Mar. 1, 2019). This rule provides that in criminal cases, the trial court "retains jurisdiction" even during "the pendency of an appeal" to correct "[e]rrors in the imposition or calculation of fines, fees, assessments, or costs." Ill. S. Ct. R. 472(a)(1) (eff. Mar. 1, 2019). Accordingly, we decline to address this matter because the trial court still has jurisdiction to correct the error.

¶ 121                                    III. CONCLUSION

¶ 122    For the reasons stated, we affirm defendant's conviction. As a part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2016).

¶ 123    Affirmed.