NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241174-U

NO. 4-24-1174

IN THE APPELLATE COURT

FILED
August 5, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| DANGELO WILLIAMS, | ) | No. 22CF181 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the trial court did not abuse its discretion, as defendant's 18-year sentence was not excessive.

¶ 2     In December 2022, a jury found defendant, Dangelo Williams, guilty under an accountability theory of one count of unlawful possession of between 100 and 400 grams of methamphetamine with the intent to deliver (720 ILCS 646/55(a)(2)(D) (West 2022)) and one count of unlawful possession of between 100 and 400 grams of methamphetamine (720 ILCS 646/60(a), (b)(4) (West 2022)). The trial court sentenced defendant to 18 years in prison, and defendant appealed. This court affirmed defendant's conviction, vacated his sentence, and remanded for resentencing. *People v. Williams*, 2024 IL App (4th) 230229-U, ¶ 2. On remand, the trial court resentenced defendant to 18 years in prison.

¶ 3     Defendant appeals, arguing his sentence is excessive. He asks this court to either

reduce his sentence or vacate his sentence and remand for a new sentencing hearing. For the following reasons, we affirm.

¶ 4                                I. BACKGROUND

¶ 5         The factual background and procedural history of defendant's case were thoroughly examined on direct appeal. *Williams*, 2024 IL App (4th) 230229-U, ¶¶ 4-37. Accordingly, we discuss only the facts necessary to the disposition of this appeal.

¶ 6         In August 2022, the State charged defendant with one count of unlawful possession of between 100 and 400 grams of methamphetamine with the intent to deliver, a Class X felony (720 ILCS 646/55(a)(2)(D) (West 2022)) (count I), and one count of unlawful possession of between 100 and 400 grams of methamphetamine, a Class X felony (720 ILCS 646/60(a), (b)(4) (West 2022)) (count II).

¶ 7                                A. Jury Trial

¶ 8         In December 2022, the matter proceeded to a jury trial. The evidence at trial established that on August 16, 2022, Sergeant Jason Clift of the Streator Police Department was working as an undercover officer for the Trident Drug Task Force. Clift arranged over text message to purchase nine ounces of methamphetamine for $3,375 from an individual named Jerome Alexander. The transaction was to occur at a Dollar General parking lot in Streator, Illinois. The plan was for Clift to purchase the drugs with marked dollar bills and then for other police officers in nearby unmarked vehicles to make arrests immediately.

¶ 9         On August 17, 2022, Clift went to the parking lot of the Dollar General. A vehicle pulled up next to Clift, and he received a text message telling him to get into the vehicle. Clift entered the back seat of the vehicle and saw a bag of methamphetamine on the back seat. Alexander was in the driver's seat and defendant sat in the front passenger seat. Clift observed that defendant

did not seem surprised by the drug transaction. Alexander tried to get Clift to smoke cannabis, but he refused. Alexander and defendant both encouraged Clift to "hit the methamphetamine," but Clift again refused. Clift handed the money over to Alexander and exited the vehicle. Clift did not see defendant handle the money or the methamphetamine. When the other officers tried to arrest Alexander and defendant, Alexander drove off with defendant still in the vehicle and fled the scene. Defendant was later apprehended and taken into custody without incident. None of the marked bills from the transaction were found on him. Alexander was never located by police.

¶ 10        A couple days after his arrest, defendant was interviewed by Inspector Samer Assaf of the Livingston County Sheriff's Office. An approximately 20-minute video recording of the interview was admitted into evidence and played for the jury. Defendant told Assaf that Alexander suggested driving with him to Indiana, and they stopped at a Dollar General. Defendant said he knew it was a "setup" when he saw the "white dude," which was why he tried to get Clift to "hit the weed" and told Alexander to "count the money." When Assaf asked defendant where Alexander kept the "ice" (Assaf testified this was a slang term for methamphetamine), defendant responded it was kept "on his side pocket." Assaf asked whether Alexander "push[ed] a lot" and tried to "push anything he can." Defendant responded that the "ice" was why Alexander no longer worked. Defendant added that he personally did not "deal with" ice.

¶ 11        Assaf then told defendant he knew "you guys stopped by the Taft house" in Peoria, Illinois, before going to the Dollar General, and defendant agreed. (Assaf testified the "Taft Homes" were a housing project in Peoria.) When Assaf asked if that was where Alexander "picked up the ice," the following exchange occurred:

"[DEFENDANT:] Ooooh.

[ASSAF:] I ain't gonna lie.

[DEFENDANT:] I'm glad you smart.

[ASSAF:] I, I know.

[DEFENDANT:] I'm glad you smart.

[ASSAF:] I was gonna say man, you know.

[DEFENDANT:] [Indistinguishable.] He grabbed more. [Indistinguishable], listen.

[ASSAF:] Ok.

[DEFENDANT:] When I was sitting in my room I was sitting here thinkin' like, d[***], if they were so smart, we could hit a double bump. 'Cuz 9 times out of 10, bro, he gone already, he back in the P."

¶ 12    Defendant told Assaf he knew of two places where Alexander might be now, one of which was a "dope spot" at an apartment on Washington Street at the Taft house, where Alexander held drugs. Later in the interview, defendant stated he did not see the "ice" in the vehicle because it was in "weed bags." Defendant directed Alexander where to drive after they left the Dollar General parking lot and fled the police.

¶ 13    On cross-examination, Assaf acknowledged that during the interview, defendant (1) never admitted he sold methamphetamine, (2) stated he "doesn't really mess with ice," and (3) claimed he did not know that Alexander "had ice until the deal was happening." However, Assaf added that defendant "knew where the ice was prior to the deal," but defendant "indicated he didn't know that that was ice because it was in weed bags."

¶ 14    Defendant testified he lived in Peoria, and he and Alexander, who went to high school together, had been friends for about seven years. In August 2022, they made plans to drive to Gary, Indiana. Defendant stated he did not see any methamphetamine before getting into

Alexander's vehicle, and he did not know how it got placed in the back seat. Defendant admitted he encouraged Clift to "smoke [the] weed" and "snort the ice" while in Alexander's vehicle. After Alexander fled the scene, defendant gave him directions because he did not want to go to jail for something that he had "nothing to do with."

¶ 15　　　　In closing arguments, the State argued defendant was accountable for Alexander's actions, while the defense argued he was not accountable. The jury was instructed on the principles of accountability. Thereafter, the jury found defendant guilty of counts I and II.

¶ 16　　　　　　　　　　B. Sentence and Direct Appeal

¶ 17　　　　The presentence investigation report (PSI) was filed on January 19, 2023. At the time of filing, defendant was 26 years old. On a written questionnaire, defendant maintained he did not commit any crime and that it was his codefendant who orchestrated the offense. Defendant's parents were never married, and he had not spoken with his father since he was 13 years old. He indicated he had a good relationship with his mother. However, defendant stated he "raised himself" from a young age and he was " 'addicted to the streets.' " Defendant dropped out of school after the fourth grade, and he disclosed being in a special education program and struggling with attention-deficit/hyperactivity disorder, slow comprehension, and slow reading skills. In 2022, defendant was employed full-time as a mechanic with Caterpillar. He reported no other employment history.

¶ 18　　　　Defendant's criminal history consisted of juvenile adjudications for felony aggravated battery in 2010, felony failure to report annually as a violent offender against youth in 2011, and felony residential burglary in 2012. As an adult, defendant was convicted of felony unlawful possession of a controlled substance in 2016, and in 2017, he was convicted of misdemeanor criminal damage to property, misdemeanor resisting a peace officer, and felony

unlawful possession of a weapon by a felon. In 2018, defendant was committed to the custody of the Federal Bureau of Prisons for 52 months on unspecified charges.

¶ 19 The PSI also detailed defendant's history of substance abuse. Defendant started drinking alcohol when he was approximately 13 years old. He admitted to having "a serious alcohol problem" after he was released from prison and drank heavily every day until he was drunk. Defendant first tried cannabis when he was 10 or 11 years old, and he admitted to being a daily user. He began using crack cocaine when he was approximately 17 years old, and he used it every other day. Defendant abused amphetamines daily from when he was 13 or 14 years old until he was 26 years old. He tried methamphetamine once when he was 26 years old, but "it was 'not his thing' and [he] did not use it again." He also tried ecstasy a few times. Defendant began abusing prescription drugs, including Percocet, Xanax, codeine, promethazine, and OxyContin, daily when he was around 25 years old. Defendant reported that he typically used drugs when he was alone and acknowledged that his drug use had caused him legal problems. He expressed a desire for substance abuse counseling.

¶ 20 In January 2023, the trial court sentenced defendant to 18 years' imprisonment on count I. Pursuant to the one-act, one-crime rule, the court merged count II into count I.

¶ 21 Defendant appealed, and this court affirmed his conviction but vacated his sentence and remanded for resentencing, holding the trial court improperly considered an aggravating factor that was inherent in the offense. *Williams*, 2024 IL App (4th) 230229-U, ¶¶ 2, 60.

¶ 22 C. Resentencing

¶ 23 In July 2024, the matter proceeded to resentencing. The trial court indicated it received the PSI from the initial sentencing hearing and the update to the PSI filed on July 18, 2024.

¶ 24        The update to the PSI included defendant's status since his incarceration. Prison disciplinary records indicated that defendant incurred 14 disciplinary infractions. Two of those infractions were classified as " 'major' " violations for (1) " 'Dangerous Disturbance/Attempt to Impede Facility Operations/Violation of Rules/Yelling in Dietary' " and (2) " 'Intimidation or Threats/Disobeying a Direct Order Essential to Safety.' " Defense counsel clarified that defendant was found guilty on the first major infraction and not guilty on the second major infraction. Defendant was also found not guilty on two of the minor infractions.

¶ 25        The State recommended an 18-year sentence, whereas defense counsel requested a 12-year sentence.

¶ 26        Defendant gave a statement in allocution. He addressed the disciplinary infractions, stating the minor infractions were for things such as "messing [with] my cell doors" and comments he made on the phone and outside his cell. Defendant claimed he was found not guilty of the two major infractions, but he accepted "responsibility for my actions on the ticket." He explained he spent "a lot" of his time reading and learning in his cell, and he believed he still had time to rehabilitate himself and "get ready for society."

¶ 27        The trial court resentenced defendant to 18 years' imprisonment. The court stated it considered the trial evidence, the PSI, the financial impact of incarceration, the factors in aggravation and mitigation, defendant's rehabilitative potential, the arguments of the parties, and defendant's statement in allocution. As to the seriousness of the offense, the court noted the offense involved 171 grams of methamphetamine, which was "pretty high up there as far as where it would fall in terms of the seriousness of the offense, not the minimum and not the maximum, probably lower than the middle."

¶ 28        In aggravation, the trial court found (1) defendant had a history of criminal conduct

and (2) a sentence was necessary to deter others. The court recognized that although defendant was young, he had committed several serious offenses, including as a juvenile. The court noted numerous efforts were made to rehabilitate defendant, such as probation, yet he continued to commit criminal offenses. As part of defendant's pattern of being unable to conform his conduct, the court cited defendant's already lengthy prison disciplinary record. Next, the court asserted its belief that defendant was not an addict. On that basis, the court stated, "[I]t makes no sense why you would participate in dealing drugs in the community and profiting off of other people's addiction when you don't have that addiction yourself." The court also expressed its concern with defendant not understanding or accepting responsibility for the underlying criminal offense. In mitigation, the court noted defendant's young age.

¶ 29 Defendant subsequently filed a motion to reconsider his sentence, which the trial court denied.

¶ 30 This appeal followed.

¶ 31 II. ANALYSIS

¶ 32 On appeal, defendant argues his 18-year sentence is excessive because the trial court failed to adequately consider his minimal role in the offense and other mitigating factors, such as his employment potential, difficult childhood, and history of substance abuse.

¶ 33 The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential, (2) the seriousness of the offense, (3) the need to protect society, and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102.

The court is afforded broad discretion in selecting the appropriate sentence "because the court is generally in a better position than a reviewing court to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits." *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 40. As such, the reviewing court will "not substitute its judgment for that of the trial court merely because it might have weighed those factors differently." *People v. Klein*, 2022 IL App (4th) 200599, ¶ 37.

¶ 34 A trial court's sentencing decision will not be reversed absent an abuse of discretion. *Klein*, 2022 IL App (4th) 200599, ¶ 37. "A sentence within the statutory range will not be deemed excessive, and will not be disturbed, unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Harris*, 2015 IL App (4th) 140696, ¶ 55. Defendant's 18-year sentence falls within the statutory range of 9 to 40 years for unlawful possession of between 100 and 400 grams of methamphetamine with the intent to deliver (720 ILCS 646/55(a)(2)(D) (West 2022)). We therefore presume the sentence is proper unless it is manifestly disproportionate to the nature of the offense. See *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104.

¶ 35 Defendant first claims the trial court failed to adequately take into account his minimal participation in the offense. "The accountability statute *** effectively bars courts from considering the offender's degree of participation in the crime by making all persons who participate in a common criminal design equally responsible." *People v. Miller*, 202 Ill. 2d 328, 340 (2002); see 720 ILCS 5/5-2(c) (West 2022). Thus, pursuant to the accountability statute, defendant was equally culpable for the acts of his codefendant, and the court could properly sentence him based on the actions of his codefendant. Moreover, although defendant did not physically handle the drugs or money himself, he nevertheless played an active role in the

commission of the crime. The State's evidence showed defendant seemed "not surprised" by the drug transaction, encouraged Clift to use cannabis and methamphetamine during the transaction, told Alexander to "count the money," and gave driving directions to Alexander after they fled the scene. During the police interview, defendant displayed a high degree of familiarity with Alexander's drug dealing, including knowing that Alexander stored the methamphetamine in the "side pocket" of his vehicle and identifying the Taft house as the place where Alexander picked up the "ice" he later sold to Clift.

¶ 36         Defendant next argues that the trial court did not adequately consider mitigating factors, such as his employment potential and difficult childhood. "A court is not required to expressly outline every factor it considers for sentencing and we presume the court considered all mitigating factors on the record in the absence of explicit evidence to the contrary." *Harris*, 2015 IL App (4th) 140696, ¶ 57. The PSI, which was submitted to and considered by the court, included information regarding defendant's employment history and the circumstances of his upbringing. As the record contains no indication to the contrary, we presume the court considered this evidence when it sentenced defendant.

¶ 37         Finally, defendant contends the trial court made a factual error at sentencing when it stated defendant was not an addict. He points to the PSI, which detailed his long history of substance abuse and his desire for substance abuse treatment. In considering whether a factual error affected the trial court's decision, the reviewing court must look to whether the lower court's comments actually show a reliance on the factual error when deciding the sentence. *People v. Cotton*, 393 Ill. App. 3d 237, 266 (2009). At the sentencing hearing, the court made the following comments:

"The other factor in aggravation that really stands out to me is deterrence.

And I agree with the State, it's very upsetting that you're not, you know, you're not an addict yourself, that's a good thing, don't get me wrong, I don't want you to be an addict, okay, but, you know, it makes no sense why you would participate in dealing drugs in the community and profiting off of other people's addiction when you don't have that addiction yourself."

¶ 38 Although we agree the trial court made a factual error when it stated defendant was not an addict, we conclude that this error did not affect the court's decision. It is well established that the court is not required to view a defendant's addiction as mitigating. See *People v. Madej*, 177 Ill. 2d 116, 138 (1997) ("[T]his court, like others, has recognized that a history of substance abuse is a double-edged sword at the aggravation/mitigation phase of the penalty hearing."); *Sturgeon*, 2019 IL App (4th) 170035, ¶ 108 ("[T]he trial court *may* view drug addiction as an aggravating factor, if it is so inclined." (Emphasis in original.)). In this regard, defendant avoided a potentially longer sentence, as the court could have recognized his history of substance abuse as a factor in aggravation. Notably, the court stated it was a "good thing" defendant was not an addict, indicating the court viewed the factual error in defendant's favor. Moreover, the court's misstatement was made in the context of a discussion about deterrence, a proper aggravating factor (730 ILCS 5/5-5-3.2(a)(7) (West 2022)), and nothing in the record suggests that the trial court relied on its misstatement to increase defendant's sentence. Therefore, the court did not commit reversible error when it misstated that defendant was not an addict.

¶ 39 Ultimately, defendant has failed to demonstrate an abuse of discretion. The trial court expressly stated that it considered the relevant statutory factors, and it properly relied upon the seriousness of the offense, defendant's lengthy criminal history, his lack of rehabilitative potential, and the need to deter others when fashioning defendant's sentence. See *Sturgeon*, 2019

IL App (4th) 170035, ¶ 102. In particular, the court noted that despite his young age, defendant had committed several serious offenses, both as a juvenile and an adult, and he continued to incur disciplinary infractions while in prison. These factors were properly considered by the court. Accordingly, his 18-year sentence will not be set aside.

¶ 40                                   III. CONCLUSION

¶ 41            For the reasons stated, we affirm the trial court's judgment.

¶ 42            Affirmed.